NICHOLAS MATTHISON, BY NEXT FRIEND, RESPONDENT,
v. JOHN BARTON PAYNE, DIRECTOR GENERAL OF
RAILROADS, ETC., APPELLANT.

Submitted December 1, 1921—Decided November 21, 1922.

1. Plaintiff was employed by the railroad company in its round-house, and it was the general practice of the company to run a train from its terminal for the purpose of carrying its employes to their place of work. On the night of the accident, on which plaintiff was injured, he boarded the train to go to the round-house. The train stopped about a mile from his place of work, and plaintiff asked a fireman in charge of a locomotive of the defendant to run him to a point near the round-house. Plaintiff and the fireman boarded the locomotive, and the latter started the engine slowly, and when he reached a point where his conductor was standing told him that he was going to run the plaintiff to his destination, and the conductor told him to go ahead. There was proof of the custom to carry employes of the company to their places of work; that it was a common practice for firemen of engines to run them in the absence of their engineers, which practice was known to the representatives of the company. *Held*, that it was the duty of the plaintiff to make a reasonably safe effort to get to his work, and that he was under no legal obligation to risk his life or limb by walking along or on the railroad tracks. *Held*, further, that the fireman was not a volunteer, and in running the engine did not contravene the rule of the company that firemen must not run engines during the absence of the engineer, unless, in emergencies, they are directed to do so by conductor, or some one in authority.

2. Plaintiff was injured while riding on an engine operated by the fireman, in the absence of the engineer. It was contended by the defendant that on all other occasions when that had been done there was another fireman on board, and, as on the occasion when plaintiff was injured, there was no fireman on the engine; it was therefore being run in disobedience of one of the rules of the company, and plaintiff could not recover. *Held*, that plaintiff's right of recovery could not be impaired because his fellow-workman, in the discharge of the duties of his employment, had disobeyed the masters' instructions as to the mode in which his duties should be performed.

3. Plaintiff was employed in the round-house of the railroad company to take care of all engines, some engaged in intrastate and some in interstate commerce. *Held*, that plaintiff was employed in both intrastate and interstate commerce, when he went and returned to his work, and for injuries sustained while going to his work, was entitled to bring suit under the Federal Employers' Liability act.

On appeal from the Hudson Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the appellant, *Collins & Corbin* and *George S. Hobart* (*Edward A. Markley,* of counsel).

For the respondent, *Ziegner & Lane* and *Alexander Simpson* (*Harry Lane,* of counsel).

The opinion of the court was delivered by

KALISCH, J.   The judgment under review is founded upon a verdict of a jury rendered in the Supreme Court for the plaintiff-respondent and against the defendant-appellant, in an action brought against the latter by the former under the Federal Employers' Liability act of April 22d, 1908, to recover damages for injuries sustained by him, as a result of a collision of a locomotive engine of the Lehigh Valley Railroad Company and on which he was riding, with a railroad car in the East Oak Island yard of that company, through the negligence of an employe of the defendant. From his injuries the plaintiff became a lunatic and sued by next friend.

The legal questions to be determined upon this appeal arise out of refusals of the trial judge to grant defendant's counsel's motions for a nonsuit at the close of the plaintiff's case and for a direction of a verdict for defendant at the close of the entire case.

Both of these motions, as we glean from the brief of counsel with defendant, are rested upon the assumption, firstly, that the plaintiff was injured through the negligent act of a volunteer servant, for which act the defendant was not legally bound to respond in damages; secondly, that neither the plaintiff nor the defendant, at the time of the plaintiff's injury, was engaged in interstate commerce.

It is obvious that the proper determination of both of these claims involves mixed questions of law and fact, and,

hence, depends largely, if not altogether, upon a solution of a preliminary inquiry, whether there was any testimony tending to show a state of facts from which a jury might properly find that the servant's act for the negligent performance of which it is sought to hold the appellant answerable, was either within the scope of such employment or was being performed under a special authorization of the master, and, further, whether or not at the time of the injury the plaintiff was engaged in interstate commerce.

From the record it appears that the plaintiff was in the employ of the railroad company in its round-house, which was about a quarter of a mile from Oak Island Junction. His duties were to keep the fires up and water in the boilers of the engines, which were run into the round-house, and to give them general care. The engines were used in interstate and intrastate commerce. It was the general practice of the company to run a train known as the "Modoc" from the terminal in Jersey City, for the purpose of gathering up its employes at various points along the route and convey them to or near the respective places of their employment. It was customary for the plaintiff to take this train to go to his night work at the round-house. On the 23d of March, 1919, he boarded the train to that end; but the train did not finish its journey and discharged all its employes on board at East Oak Island. The premature discharge of all on board it appears was due to the fact that just before reaching East Oak Island the conductor of the train received word from the train dispatcher that an engineer had been left behind and to go back and get him, and, thereupon, instead of running the train to Oak Island Junction it stopped at East Oak Island. It further appears that for more than a year it had been the constant practice to run the train to East Oak Island, known also as "Central Crossing," that place being the nearest point to the round-house, where the plaintiff worked, a distance of about a quarter of a mile. Where the train stopped was about a mile from the round-house. One Hanafin was the fireman of engine No. 3165 and one Nelson was its engineer, and it was the latter who was left behind,

and in order to fetch him the "Modoc" stopped at East Oak Island, discharged the employes on board and turned back. Engine No. 3165 was at the place where the "Modoc" stopped and discharged the employes, among whom were Hanafin and the plaintiff. Hanafin went to his engine and, at his request, he and the plaintiff boarded the engine so that the latter might be taken as far as Central Crossing, which was near to the round-house where he worked. Hanafin operated the engine, going slow, and right here it will serve a useful purpose to give his version of what he did immediately before he started on the journey to Central Crossing. He testified: "When I got to the foot of the hump I stopped and told Kelly, I said, 'Kelly, I am going to run Matthison up to Central Crossing.' 'Go ahead,' he said." Kelly was Hanafin's conductor. Rule 1060, relating to the duties of firemen, reads as follows: "They will take charge of engines during the absence of engineers, but must not run them unless, in emergency, they are directed to do so by conductors or some one in authority."

Now, there was proof that it was a general practice to take the employes to their respective places of employment; that the train was run as far as Central Crossing; that Hanafin, the fireman, had often operated the engines carrying employes to Central Crossing, and that it was a common practice for the firemen of engines to run them in the absence of their engineers, which practice was known to the representatives of the defendant, such as the yardmaster and conductors; that on the night in question the train stopped a mile away from the place where the plaintiff worked, and as a result he was left in a position either to take a perilous route over tracks and switches to reach his place of employment or to remain where he was for an indefinite time, and thus, by his absence from the performance of his duties, cause probable loss and mischief to his employer. For we may safely assume that the oiling of engines, keeping the fires up and water in the boilers, &c., are important duties, a neglect to perform which might lead to disastrous consequences. The plaintiff was under no legal obligation to risk

his life or limb to reach his place of work by attempting to walk. It was, however, his duty to make a reasonably safe effort to get to his work so that the engines coming in or going out might be properly cared for. He was entitled to rely on the custom established by the defendant, that he would be conveyed to his work—that is, to Central Crossing. He was also warranted in relying upon the common practice, open to his observation, of firemen operating the trains in the absence of the engineers, which practice would be tantamount to holding them out as acting within the scope of their employment. Besides all this rule 1065 seems to us to expressly recognize the duty of a fireman, in the absence of his engineer, to operate the engine as a part of the employment. While it is true that the performance of the duty to operate is under the limitation of the presence of an emergency and upon the order of the conductor or other person in authority, nevertheless it was clearly a duty arising out of the employment and incumbent upon a fireman to perform. The rule does not disclose what special kind of emergency must present itself in order to properly permit a fireman to run an engine at the direction of a conductor or some one in authority. This much, however, is clear, that the determination of whether or not the emergency has occurred which under the rule of the company entitles a fireman to run an engine is left to the discretionary judgment of the conductor or person in authority.

There was proof in the present case that the fireman ran the engine only after he received a direction of his conductor to go ahead. The conductor denied that he gave any such direction. This raised a controverted question of fact for a jury to decide.

There is no denial in appellant's brief that there was proof that it was a common practice for Hanafin, with the knowledge of person in authority under whose supervision he was working, to operate an engine to Central Crossing in the absence of his engineer; but it is argued that on all those occasions there was a fireman on board of the engine, while on the occasion when the plaintiff was injured there was no

fireman aboard, and, therefore, the engine was being run in disobedience of one of the rules of the company, prescribing the duties of firemen, and, hence, he was not acting within the scope of his employment. This position, taken by appellant's counsel, is palpably unsound. It may very well be, if Hanafin had received an injury as a proximate cause of his disobedience of his master's orders, that he would be remediless; but, surely, the plaintiff was not chargeable with knowledge of the rules of the company relating to the duties of firemen of engines. The plaintiff's right to a recovery cannot in anywise be impaired because his fellow-servant in the discharge of the duties of his employment had wrongfully or carelessly disobeyed his master's instructions as to the mode in which such duties shall be performed; for, *e. g.*, in the present case, the failure to have a fireman on board the engine, a fact which was known to the conductor, who, under the rule of the company, was invested with authority to direct the fireman to run the engine and who directed the latter to go ahead.

Furthermore, the fact that Hanafin disobeyed the instructions of the defendant in not having a fireman on board the engine he was running does not absolve the defendant from liability. In *Rhinesmith* v. *Erie Railroad Co.* (*Court of Errors and Appeals*), 76 *N. J. L.* 783, Mr. Justice Minturn, in speaking for the court (at *p.* 784), said: "The defendant company now contends upon this writ of error that if it be conceded that Armstrong placed the torpedo upon the track his act cannot be charged to defendant, because defendant's rules governing employes expressly prohibited the placing of torpedoes upon tracks in close proximity to a railroad station. But this contention, under the doctrine of *respondent superior*, cannot prevail to absolve defendant, unless it be established that what Armstrong did was a wanton act or was not in furtherance of any duty that was within the scope of his employment."

But it is further contended that the hour of eleven o'clock P. M., the time fixed for Hanafin and the conductor to start in on their work had not yet arrived and, therefore, Hanafin

was purely a volunteer, for whose negligent act the defendant cannot be held liable. Our attention has not been directed to any well-considered case which espouses any such strange theory. On the contrary, our Court of Errors and Appeals, in *Joseph Cicalese* v. *Lehigh Valley Railroad Co.,* 75 *N. J. L.* 897, in an opinion delivered by Mr. Justice Bergen, held: "Where a railroad company provides hand cars for the transportation of its employes from the place where they have been working to a point convenient to their homes, even if the journey is commenced after the usual work of the day has ceased, the relation of master and servant continues until the employe has reached the destination to which he is being carried by, or with the consent of, the company, and the company is not relieved of the duty to furnish a reasonably safe machine and appliances for that purpose while such relation continues to exist."

In *Depue* v. *Salmon Company,* 92 *N. J. L.* 550, our Court of Errors and Appeals, speaking through Mr. Justice Swayze (at *p.* 551), held: "The relation of master and servant continues during the carriage of the servant to and from the work, when done by the master or with his consent, where from the character of the service such transportation is beneficial both to the master and the servant."

Next, it is contended that the plaintiff assumed the risk in riding on the engine. What risk he assumed is not made clear. The risks that the plaintiff assumed were obvious risks incident to his employment or which by the exercise of reasonable care could be made known to him. He did not take the risk of injury resulting from the negligence of his fellow-servant. *Horton* v. *Seaboard Air Line,* 233 *U. S.* 492; *Ward* v. *Chicago, &c., Railroad,* 252 *Id.* 18.

Lastly, it is argued that the judgment should be reversed because there was no proof that the plaintiff at the time he was injured was engaged in interstate commerce.

The proof tended to show that the plaintiff was employed at the round-house to take care of all engines without regard to their use, and, therefore, we think that he was employed both in interstate and intrastate commerce and that when

he went to his work and was returning from it he was engaged in both kinds of commerce. *Erie Railroad* v. *Szary,* 253 *U. S.* 85; *Erie Railroad* v. *Collins, Id.* 78; *Philadelphia and Reading Railroad Co.* v. *Donato,* 65 *U. S. Law Ed.* 955.

For the reasons stated judgment is affirmed.