BARBARA S. DEMAREST AND FRANK B. DEMAREST, HER HUSBAND, APPELLANTS, v. PALISADES REALTY AND AMUSEMENT COMPANY, A CORPORATION, RESPONDENT.

Submitted November 7, 1924—Decided January 30, 1925.

Plaintiffs, intending a visit to defendant company's amusement park, procured a free pass thereto through the intercession of a friend, which pass read: "Complimentary. Pass four (4) to grounds and following attractions," including "sleigh ride," an amusement device, while riding on which plaintiff B. S. D. was injured through negligence of defendant's agent in charge, as the proof tended to show. *Held*—(1) that plaintiff, who paid an admission fee to the park (which appears to have been unnecessary in view of the pass), and who went upon the "sleigh ride" *gratis*, in virtue of the pass, was an invitee upon the premises and the ride, and (2) that the question of defendant's liability for her injury became a factual one for the jury to pass on, in the absence of a contract between the parties absolving defendant from liability for injury to the plaintiff while in the enjoyment of a privilege extended by the pass.

---

On appeal from the Supreme Court.

For the appellants, *Wayne Dumont.*

For the respondent, *Michael Dunn, Arthur C. Dunn* and *Michael Murphy.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. Plaintiffs-appellants, husband and wife, brought this action against the defendant for injuries caused to the wife, Barbara S. Demarest, by reason of the alleged negligence of defendant's agents and servants in operating an amusement device maintained by it in a park which it owned and controlled, while she was using and enjoying the device; and the husband's action was for his outlay of money for the treatment of his wife for her injuries and for loss of her companionship during disability.

Among the devices in the park was one known as a "sleigh ride," operated on an inclined plane, upon which is maintained a track over which cars, known as sleighs, are run for the use of persons desiring to take a ride thereon. They are shaped somewhat like a sleigh, and each is adapted for the accommodation of two persons who are seated on the floor, one behind the other, the one in front being provided with a leather belt strapped across in front of the rider's body to prevent expulsion from the car or sleigh in case of a sudden stop. The sides are raised sufficiently to prevent the riders from falling off. When two persons are thus seated in the car or sleigh, it is propelled up to the top of the inclined plane, and, after making a short turn, it descends with its occupants on the track provided for it on a long and steep grade, at a rapidly accelerated speed toward the bottom, until it reaches a certain place, where a servant is stationed who has charge of a contrivance in the nature of a brake, by which the speed of the car or sleigh can be gradually decreased until it is brought to a stop, so that the occupants can safely alight from it.

The plaintiff-appellant Frank Demarest went to the defendant's amusement park with his wife and children and several other people on July 20th, 1922, his wife having bought a ticket or tickets of admission. Three or four days previously thereto he received a free ticket or pass for four

persons for the gratuitous enjoyment of certain amusement features in the park (which included admission to the park). This he got from a man by the name of Quinn, who appears to have frequently gotten passes for different people. Quinn was a friend of his and of the amusement company. The pass was not issued to any particular person or persons, but had the name "J. Quinn" written on the back of it, which, apparently, showed that it was issued for or on account of Mr. Quinn—that he solicited it. On the face of it were the words, "Complimentary: Pass four (4) to grounds and following attractions," among others, "sleigh ride." The defendant admits the possession of the pass by the plaintiff-appellant Frank B. Demarest, and its presentation to, and acceptance by, its agents.

Mr. Demarest with his wife and a woman in their party went to the device called "sleigh ride," and an attendant put her on the floor of the car and her woman friend directly behind her. Mr. Demarest observed them on the ride, and as the sleigh in which they were was coming down the incline at a very great rate of speed, and when near the brake handles, noticed an attendant talking to a man who operated the brake, who looked around, and, seeing the car thus approaching, made four or five jumps to the brake and grabbed the handle, stopping the car suddenly, and the two women were, apparently, by this action, thrown on their backs. rendering Mrs. Demarest unconscious, breaking three ribs and seriously injuring her.

At the trial of the case, after the presentation of plaintiffs-appellants' evidence, defendant moved for a nonsuit on the ground that the plaintiff-appellant Barbara S. Demarest was a licensee on the premises of the defendant and not an invitee, and, therefore, the defendant was not liable to her for the negligence, if any, of its servants and agents, and this upon the theory that she rode upon a free pass instead of a paid ticket to the device.

The court, upon the defendant's motion, granted the nonsuit against the plaintiffs, and from the judgment entered thereon they appeal here.

Under the doctrine enunciated for this court by Mr. Justice Depue in *Phillips* v. *Library Co.*, 55 *N. J. L.* 307, we think the plaintiff Mrs. Demarest was not a licensee, but an invitee upon the premises and the ride. It is there laid down that the owner or occupier of lands who by invitation, express or implied, induced persons to come upon the premises, is under the duty to exercise ordinary care to render the premises reasonably safe for such purpose, or, at least, to abstain from any act that will make the entry upon or use of the premises dangerous; that the gist of liability consists in the fact that the person injured did not act merely on motives of his own, to which no sign of the owner or occupier contributed, but that he entered the premises because he was led by the acts or conduct of the owner or occupier to believe that the premises were intended to be used in the manner in which he used them, and that such use was, not only acquiesced in, but was in accordance with the intention or design for which the way or place was adapted and prepared or allowed to be used. Now, Mrs. Demarest was led to enter upon the "sleigh ride" by the "complimentary" pass and by the acts and conduct of the agent of the owner or occupier (the defendant), and to believe that the sleigh ride was intended to be used by her in the manner in which it was used, and that it was safe for her to use it.

*Phillips* v. *Library Co.* has been repeatedly followed and applied by the courts of this state, one of the latest cases being *Gibeson* v. *Skidmore,* in this court, 99 *N. J. L.* 131, wherein we reiterated the doctrine of that case.

The situation of the injured plaintiff is quite analogous to that of a person traveling upon a railroad train on a free pass, in which case it has been held in this state that the defendant company may exculpate itself from liability to a passenger who receives *knowingly* a free ticket with an endorsement upon it of a contract that in consideration of a free passage he will assume the risk of injuries to his person from the negligence of the servants of the railroad company. In *Kinney* v. *Central Railroad Co.*, 32 *N. J. L.* 407, Chief Justice Beasley, in the Supreme Court, said (at *p.* 412):

"The transaction is virtually this: The carrier says to the passenger, I have employed careful and skillful men to manage my locomotive and cars, but they are human, and they may fail in their duty, to your danger. The passenger says: In consideration of a free passage, I will run that risk. The bargain is struck on these grounds, and I am clear that it would be a great refinement to impeach it as being prejudicial to public interests." This case was affirmed, 34 *Id.* 513, wherein Mr. Justice Van Syckel, writing the opinion, says (at *p.* 514), that "the single question to be determined is whether the express agreement exempts the company from responsibility for the neglect of its agents. The contract is clear in its expression, made between competent parties, and unless it contravenes some settled rule of law, or is contrary to public policy, it fully dispenses the company from liability." And (at *p.* 516), "Why should the passenger who solicits a free pass be permitted to escape the liability to loss which he voluntarily assumed in order to secure the accommodation? It is certainly a breach of good faith in the passenger to attempt to fix the carrier with responsibility in such case."

The Supreme Court, in *Trenton Passenger Railway Co.* v. *Guarantors Liability Co.,* 60 *N. J. L.* 246 (at *p.* 254), commenting upon the Kinney cases, said: "It was held in both courts that where a common carrier of passengers agreed to carry a passenger gratuitously, a valid contract might be made between the carrier and such passenger, exempting the carrier from all liability even for injuries resulting from its negligence or the negligence of its servants. But this was distinctly put upon the ground that, in 'such case, the ordinary relation of a passenger and common carrier did not arise, but rather a relation, as the learned Chief Justice pointed out, analogous to that of a bailor and a gratuitous bailee."

Assuming that the case of a free pass to an amusement park entitled the holder to the privilege of the park and the amusement devices thereof is analogous to the relation of

bailor and bailee, the doctrine of the Kinney cases is particularly applicable.

In *Labrasca* v. *Hinchman,* 81 *N. J. L.* 367, the Supreme Court, speaking by Mr. Justice Minturn (at *p.* 369), observed: "Chancellor Kent enunciated the doctrine in *Thorne* v. *Deas, 4 Johns. (N. Y.)* 84, where he says: 'By the common law a mandatory, or one who undertakes to do an act for another without reward, is not answerable for omitting to do the act, and is only responsible when he attempts to do it, and does it amiss. In other words, he is responsible for a misfeasance, but not for a non-feasance.' Upon a like application of this principle *a carrier of passengers has been held liable for a negligent injury to a passenger, although the latter is being carried without compensation,* except as we have held in this state where the contract of carriage exempts the carrier from such liability. *Kinney* v. *Central Railroad of New Jersey,* 5 *Vr.* 513; *Steamboat Co.* v. *King (U. S.),* 16 *How.* 469; *Rose* v. *Des Moines Railway,* 39 *Iowa* 246; *Todd* v. *Old Colony Railroad (Mass.),* 3 *Allen* 18; *Flint &c., Railroad Co.* v. *Weir,* 37 *Mich.* 111; *Annas* v. *Milwaukee Railroad Co.,* 67 *Wis.* 46."

In *Northern Pacific Railroad Co.* v. *Adams,* 192 *U. S.* 440; 48 *Law Ed.* 513, it was held that a stipulation in a railroad pass that the company shall not be liable to the user "under any circumstances, whether of negligence of agents or otherwise, for any injury to the person," violates no rule of public policy, and relieves the company from liability for personal injuries resulting from the ordinary negligence of its employes to one riding on the pass, *who has accepted it with knowledge of its conditions.*

In *Southern Pacific Co.* v. *Schuyler,* 227 *U. S.* 601; 57 *Law Ed.* 662, it was held that an employe in the railway mail service who, in good faith and with the consent of the carrier, accepts when off duty a free passage in interstate transportation, does not forfeit his right to the benefit of a rule of the local law which charges a carrier with the duty to exercise care for the safety of gratuitous passengers because his gratuitous carriage may have been forbidden by the Hepburn

act of June 29th, 1906, since that statute itself fixed the penalty for violations of its prohibitions by declaring that the carrier and passenger shall, in such cases, be deemed guilty of a misdemeanor, punishable by fine. And Mr. Justice Pitney, delivering the opinion of the court, observed (at p. 613) 57 Law Ed. 669: "Neither the letter nor the spirit of the act makes an outlaw of him who violates its prohibitions by either giving or accepting gratuitous interstate carriage. The deceased no more forfeited his life, limb or safety, and no more forfeited his right to the protection accorded by the local law to a passenger in his situation, than the carrier forfeited its right of property in the mail car upon which the defendant rode. His right to safe carriage was not derived, according to the law of Utah, from the contract made between him and the carrier, and, therefore, was not deduced from the supposed violation of the Hepburn act. It arose from the fact that he was a human being, of whose safety the plaintiff in error had undertaken the charge. With its consent he had placed his life in its keeping, and the local law thereupon imposed a duty upon the carrier, irrespective of the contract of carriage. The Hepburn act does not deprive one who accepts gratuitous carriage, under such circumstances, of the benefit and protection of the law of the state in this regard."

It is noticeable that in *Morris* v. *West Jersey and Seashore Railroad Co.*, 87 N. J. L. 579, it was held in this court that the railroad company was not liable to one riding on a free pass containing a stipulation that the person accepting and using it assumed all risk of accident, without mentioning the doctrine of our earlier cases, to the effect that the exemption from liability rested, not alone upon the stipulation, *but upon knowledge of it* by the pass holder. And it may be inferred that there was proof in the Morris case of the pass holder's knowledge of the stipulation, because it is stated that the trial judge directed a verdict for the defendant on the authority of *Kinney* v. *Central Railroad Co.*, 32 *Id.* 407; affirmed by this court in 34 *Id.* 513, which case in the Supreme Court lays it down that non-liability would exist if

such endorsement upon the free ticket was known to the holder thereof, and in the affirming opinion it is stated that this court fully agreed with the Supreme Court that the *contract* under consideration (which presupposes knowledge of its terms by both parties) excused the defendant.

In *Lebkeucher* v. *Pennsylvania Railroad Co.*, 97 *N. J. L.* 112, where a woman delivered two packages to an agent in charge of the parcel room at the defendant's depot in Newark and had two tickets or receipts for them given to her, upon which were notices limiting liability of the railroad company in the event of loss, besides such notices posted in the parcel room, she was permitted to recover for the value. of the package which was mistakenly delivered to another person, because the trial court found as a fact that the plaintiff did not know, and had not been apprised of, the contents of the notices limiting liability, and Mr. Justice Katzenbach, delivering the opinion of the Supreme Court, said (at *p.* 116); "We cannot see any sound basis for holding differently [as to the effect of notice not brought home to the party], merely because the relation between the parties is that of bailor and bailee rather than that of shipper and carrier." This case was affirmed in this court for the reasons stated in the opinion of the Supreme Court. 98 *Id.* 271. And in the case of *Delaney* v. *Erie Railroad Co.*, 97 *Id.* 434, in the Supreme Court, where a woman was riding on a commutation ticket for which she had asked and paid, but which was issued in the name of a man instead of her own, and upon which ticket· she had been riding for some time, and which was at last taken up by the conductor, she was allowed to recover for the indignity and humiliation which she suffered by reason of the remarks and action of the conductor on the train; and Mr. Justice Black, writing the opinion, said (at *p.* 437), that whether the plaintiff was negligent in not examining her ticket and discovering the error on its face was a question of fact for the jury. This case was affirmed in this court. 98 *Id.* 558.

We perceive that there is a distinction between the facts of the case at bar and those in *Shelton* v. *Erie Railroad Co.*,

73 *N. J. L.* 558, and *Colton v. Delaware, &c., Railroad Co.,* 80 *Id.* 592, wherein it was held that the conclusive force is to be given to the intrinsic effect of a railroad ticket as expressed on its face when tended by a passenger, and that the face of the ticket is conclusive evidence to the *conductor* of the terms of the contract of carriage upon which he has a right to rely; and also the case of *Wilson v. West Jersey, &c., Railroad Co.,* 83 *Id.* 755, where the same doctrine was applied as to a ferry ticket. Of course, when a person undertakes to travel on a railroad train or ferry-boat he must pay his fare in cash or have a ticket which is its equivalent; and if a ticket, what appears upon its face is that upon which the conductor of a train, or ticket man at a ferry-slip, can rely as to the party's right to transportation, which is quite different from a free pass on a railroad or ferry-boat, which, of itself, entitled the holder to a ride, for, with the terms of any stipulation printed thereon, absolving the company from liability, the conductor or ticket man has nothing whatever to do.

Because there was no contract of non-liability made by the parties to this cause in favor of the defendant company who issued the gratuitous pass, the question of the company's liability through negligence became a factual one for the jury to pass upon.

In our opinion the facts of this case (plaintiff being an invitee) presented a jury question as to whether the defendant and its agent exercised due care for her safety on the "sleigh ride." And this leads to a reversal, to the end that a *venire de novo* may be awarded.

*For affirmance*—THE CHIEF JUSTICE, BLACK, KATZENBACH, CLARK, JJ. 4.

*For reversal*—THE CHANCELLOR, TRENCHARD, PARKER, MINTURN, KALISCH, CAMPBELL, LLOYD, VAN BUSKIRK, MCGLENNON, JJ. 9.