BRIDGET E. LAVERTY, PETITIONER-RESPONDENT, v. LUDINGTON MANAGEMENT, INCORPORATED, AND W. D. FRENCH COMPANY, DEFENDANTS-APPELLANTS.

JAMES H. LAVERTY, JR., PETITIONER-RESPONDENT, v. LUDINGTON MANAGEMENT, INCORPORATED, AND W. D. FRENCH COMPANY, DEFENDANTS-APPELLANTS.

Submitted February 17, 1933—Decided April 27, 1933.

For the appellants, *Katzenbach, Gildea & Rudner.*

For the respondents, *Richard J. Mackey.*

The opinion of the court was delivered by

DONGES, J.   These appeals are from judgments of the Supreme Court affirming, on *certiorari,* the conclusions of the workmen's compensation bureau in favor of the petitioners-respondents, Bridget E. Laverty and James H. Laverty, Jr., and against appellant W. E. French Company, and dismissing the *certioraris.*

James H. Laverty, Sr., and James H. Laverty, Jr., father and son, resided at or near Moorestown and were employed by W. D. French Company, through its agent, Gray, as laborers in the construction of Iron Rock golf course, in Camden county.   They worked, on September 16th, 1931, from seven A. M. to five-thirty P. M., and then, in accordance with their practice, they, with a number of other employes, boarded a truck of the employer to be conveyed from the golf course to Moorestown, where they lived.   On the way to Moorestown the truck was struck by a railroad train, and James H. Laverty, Sr., was killed, and James H. Laverty, Jr., was injured.   Laverty, Sr., left Bridget, the petitioner, his widow, and four dependent children.

The record discloses that it is admitted that Laverty, Sr., and Laverty, Jr., were employed by appellant; that they were accustomed to go to and from their work in appellant's truck; that they were in one of such trucks, on the way from their work to their homes, at Moorestown, at the time of the collision; and that the injuries resulting in the death of Laverty, Sr., and the injuries to Laverty, Jr., were occasioned by such collision.   The only questions raised are whether or not the injuries were received in the course of and arising out of the employment.

The proofs warrant a finding that Laverty, Jr., was employed on the job in question for about three months, during all of which time he was accustomed to go back and forth from his home to work and from work to his home in appellant's

truck; that, if he did not do so every work day, he did so almost every day; that when he was engaged he was told to "come to the job in the morning and get on the truck and go down to the golf course;" that he was instructed to come home the same way, by direction of the foreman, Gray; that Mr. French, the head of the company, was present each morning when the truck left, and was frequently present when the truck returned with the workmen on it; that Mr. French "told us that would be a way to go up and down." Laverty further testified: "When he hired me, he said, 'be in the yard in the morning and get on the truck and go down with the rest of the men;'" that he was in the yard the first morning that his father appeared for work and that he heard Mr. French tell his father "to get on the truck;" that Laverty, Sr., worked about three weeks on the job; that it was a daily practice for a large number of workmen to be transported by appellant's truck with Laverty; that at the time of the accident there were fifteen or sixteen workmen in the truck. It was further testified that Gray told the workmen: "Be in the yard in the morning and we will take you down," and that, on some occasions, several trucks were used to transport workmen. All of this was known to the employer, and the testimony leaves no doubt that the workmen were transported for the mutual benefit of the employer and employes. It is true that the workmen received no pay for the time that they were in the truck, their pay time beginning when they arrived at the job and ending when they ceased their labors at the job. As was said in *Saba* v. *Pioneer Contracting Co. et al.*, 103 *Conn.* 559; 131 *Atl. Rep.* 394:

"When an employe mounted the truck at the employer's direction to go to the job, in accord with the employer's contemplation of what his conduct would be in going to the place of the job, he came within the zone of his employment as contemplated by his employers. The mere fact that the time spent on the truck was not time for which by his contract of employment he was paid is immaterial, in view of the facts found."

In the instant case, the employes, though not actually work-

ing at the time of injury at the job for which they were employed, were injured in doing something which the employer expressly directed, or consented, they should do as an incident of their employment, and were, in our opinion, within the scope of their employment while on the employer's truck being by him transported from his job.

There does not appear to be any case in our reports directly in point. The case of *Fisher* v. *Tidewater Building Co.*, 96 *N. J. L.* 103; *affirmed,* 97 *Id.* 324, involved a case where the employer furnished transportation to his employe by a railroad, and the employe was killed by another train while attempting to board his train, and it was held that the period of service continued during the time of transportation, and an injury occurring during such transportation arose out of and in the course of the employment. The rule there enunciated is applicable here.

In *Alberta Contracting Corp.* v. *Santomassimo,* 107 *N. J. L.* 7, the workman was being transported by the employer's truck to work that was not accessible by other means, and it was held that the relation continued during such transportation. In the instant cases, the employe could reach his work by public transportation. But, it appears that transportation was furnished by the employer to all employes who would be served by the trips of the trucks from the place of business of the employer to the job and back again at the end of the day. The proofs might even warrant a finding, if that were necessary, that transportation was a part of the contract of hiring.

Mr. Justice Trenchard, speaking for the Supreme Court, in the Alberta case, declared the pertinent rule as follows:

"The relation of employer and employe continues while the employe is riding to and from his employer's premises, in a truck used in connection with his employer's work, by direction of his employer, with his knowledge and acquiescence in the continued practice, which was beneficial to both the employer and employe, and an injury sustained while so riding arises out of and in the course of his employment. See *Cicalese* v. *Lehigh Valley Railroad Co.,* 75 *N. J. L.* 897; *Depue*

v. *Salmon Co.*, 92 *Id.* 550; *Dunbaden* v. *Castle's Ice Cream Co.*, 103 *Id.* 427; *Bolos* v. *Trenton Fire Clay and Porcelain Co.*, 102 *Id.* 479; *affirmed*, 103 *Id.* 483."

Applying the rule to the undisputed facts in the cases under review, there was no error in the finding that the relation of master and servant continued during the period of the transportation of the employe by the employer, and that the injuries sustained arose out of and in the course of employment of the decedent and the respondent, Laverty, Jr.

The judgments under review will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ.   12.

*For reversal*—None.