NANCY RUBEO, PROSECUTOR, v. ARTHUR McMULLEN COMPANY, RESPONDENT.

Argued May 6, 1937—Decided August 18, 1937.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutor, *Matthew M. Sepin (Sallie H. Donarovich,* of counsel).

For the respondent, *Gray & Reid (A. Lionel Reid,* of counsel).

The opinion of the court was delivered by

HEHER, J. The deceased employe, Dominick Rubeo, was killed by accident while being transported in one of his employer's motor trucks, operated by its superintendent, from

the *situs* of his employment at St. George, Staten Island, in the State of New York, to the vicinity of his home in the city of Newark, in this state; and the question for decision is whether the accident so occurring arose out of and in the course of his employment within the intendment of the Workmen's Compensation act of 1911 (*Pamph. L., pp.* 134, 763), as amended.

An award in favor of the dependents made by the compensation bureau was reversed by the Hudson Common Pleas. The Supreme Court sustained this judgment. Our court of last resort remanded the cause for further findings of fact and a determination in accordance with the apposite principles, as outlined in the opinion. 117 *N. J. L.* 574.

We resolve the basic inquiry in the affirmative.

In May, 1934, the respondent employer sought the services of the deceased employe, a skilled concrete worker who had been in its employ on prior occasions, for the performance of a contract for the building of a dock on Staten Island. Through its superintendent, Holt, it persuaded Rubeo to leave his employment at the Newark Airport, and to enlist in its service at the same base weekly wage. The evidence is in conflict as to whether the deceased was to be provided with transportation from his home to the *situs* of the construction work; but it is conceded that Holt, who lived in the city of Rahway, in this state, transported the deceased, almost daily, between his home, or the immediate vicinity thereof, and Staten Island. While they were engaged in "pouring concrete"—from May 7th, 1934, to the ensuing May 24th—daily transportation was provided, and thereafter and until June 7th, 1934 (the day of the fatal accident), it seems to have been the general practice. Holt said it was "done regularly." The vehicle was one of the employer's trucks assigned to the use of Holt, and garaged near his home at the employer's expense. The fatality occurred on the homeward trip, after the completion of the day's work.

When the accident happened, the essential statutory relation, in popular understanding and intent, had not been terminated. The line of delimitation is not so finely drawn. The provision of transportation, if not the subject of an

express or implied undertaking binding under any and all circumstances, was plainly within the contemplation of the parties, at the time of the making of the contract of employment, as the thing to be done when in special circumstances the common interest would thereby be subserved. But however this may be, the furnishing of this accommodation grew, with the knowledge and acquiescence, if not indeed the direction, of the employer, into a practice grounded in mutual convenience and advantage. The deceased employe, while not directly concerned, in the journeys to and fro, with the performance of the work for which he was employed, was yet engaged in that which, by mutual consent, was considered as incidental to the employment. It was a thing so intimately related to the particular service contracted for as to be deemed, in common parlance, a part of it. This is the legislative sense of the term "employment." The requisite relation of master and servant continued during the journey; and the hazards thereof are therefore regarded as reasonably incident to the service bargained for.

In the circumstances, the transportation afforded the deceased employe was not solely for his benefit and convenience, so as to be disconnected from the employment in the statutory sense. The advantages accruing to the employer from this arrangement are obvious. It sought the skilled service of which the deceased employe was capable; and the furnishing of transportation between the employe's home and the *situs* of the current operations was designed to avoid the uncertainty and delay incident to travel on public conveyances, and thus to secure efficiency and expedition in the performance of the underlying construction contract. The scene of operations shifted from time to time; and the employer plainly deemed it good policy to supply transportation facilities for workmen who could not conveniently live at the *locus*. The provision of a motor vehicle for the daily use of its superintendent, and its housing at the employer's expense near his home in Rahway, are proof of this.

The judgment of the Hudson Common Pleas is accordingly reversed, and the judgment of the compensation bureau affirmed, with costs.