New Jersey Department of Labor,
Workmen's Compensation Bureau.

ROSE GELBART, PETITIONER, v. N. J. FEDERATED EGG
PRODUCERS ASSOCIATION, RESPONDENT.

Decided July 7, 1939.

For the petitioner, *Robert J. Nevins.*

For the respondent, *James J. Skeffington.*

\*    \*    \*    \*    \*    \*    \*

Rose Gelbart, the petitioner, seeks compensation and other items of expense from respondent, New Jersey Federated Egg Producers Association, by reason of the accidental death of her husband, Max Gelbart, an employe of respondent.

The accident, which occurred on Monday, August 29th, 1938, and the ensuing injuries received therefrom by the decedent as the result of which he died on August 31st, 1938, resulted from an automobile accident involving a car owned and operated by one, David Kosecoff, in which decedent was riding, and the car of a third party.

In order that a clear picture of the nature and duties concerning the employment of the decedent, Max Gelbart, with respondent may be shown and particularly as they relate to circumstances at the time of the accident in question, it would appear proper to briefly refer to the factual proofs submitted at the hearing.

It is undisputed that decedent was in the employ of respondent and was receiving a salary of $30 per week for the services rendered by him. He resided, at the time of the accident and for some time prior thereto, with David Kosecoff on the Lakehurst road near Toms River. Respondent's place of business is also located on Lakehurst road and about one mile east of the home of David Kosecoff.

The testimony of Fred Wiedeke, secretary-treasurer and manager of respondent's business, indicated that there were two keys used in opening the place of business of respondent, one of which was kept by Wiedeke and the other by the decedent. The business of respondent included the collecting of eggs from farmers, the taking of same to the grading station for inspection and candling and the subsequent delivery and sale of such eggs to buyers thereof.

The proofs further indicate that Wiedeke came to work between ten and ten-thirty A. M., that it was the usual event for Gelbart, the decedent, to open the station in the morning, he having the only other key. Moreover, Wiedeke testified that the decedent was subject to call by him during any hour of the day or night to open the grading station. The busy days during the week in respondent's business were Monday and Thursday. On Monday, the decedent would have to get to respondent's place of business between six and seven A. M. There were no fixed hours of employment for the decedent, it being understood that he worked longer on some days than on others.

It further appeared from the testimony that in order to get in the candling room where the decedent worked, it was first necessary for him to also open the grading station; that at the time of the accident, there were two other employes working in the grading station, to wit, Joseph Pulz and one Hurley, who came to work at about nine A. M.; and it was also necessary for the truckers to get into the grading station. It would follow, of course, from this that the admission of these persons necessitated the opening of the station by the decedent.

Now, in addition, it appeared that David Kosecoff, with whom the decedent was proceeding to the grading station of

respondent at the time of the accident, also performed various services for respondent. He, Kosecoff, maintained trucks for the delivery of respondent's eggs, bearing the name of respondent; that early in the morning in the course of his services for respondent, he picked up empty cases; and that he did prepare tags which would be presented to the farmers to enable him to get eggs; and that in order to get such eggs, it was necessary for him to first enter the grading station early in the morning by means of admittance by the decedent and long before Wiedeke, the manager, came to work. Kosecoff testified that the decedent gave him a receipt for each load of eggs brought in; and that on the day of the accident, at about eight A. M., and shortly before he met decedent, he was actually on his way to the grading station to commence his duties; that on this particular day, it was necessary for him to be there early. He further testified, in answer to a question by the court as to why he was going to the station on the morning of the accident in advance of his trucks, that he had to prepare the cases and the shipping tags for the farmers, which was in the course of his usual duties on such days; and further that he had been instructed by respondent, should he have occasion to get into the grading station at any time other than the usual business hours, to go to the decedent for the key.

On the day of the accident, it appeared that decedent had left his home very early in the morning, at about seven A. M., and some time before Kosecoff; that some time thereafter during the same morning, Kosecoff, who was then proceeding to the grading station for the purpose of performing the duties hereinbefore referred to, met the decedent on the road leading from Kosecoff's house to the place of respondent's business; that the decedent was walking back from the grading station to the house; that decedent stopped Kosecoff and explained to him that he had forgotten the key to the station and that it was in his other pants; that the decedent asked Kosecoff to take him home to get the keys, as there was no other way to get into the station and no one else could get in either; that it was necessary that Kosecoff get the key, as his duties required his admission to the station that morn-

ing; that he, Kosecoff, then took the decedent home where the decedent procured the key, after which both proceeded in the car of Kosecoff to drive back to the grading station; and that during the return trip, the automobile collided with that of the third person; and that the decedent sustained injuries from which he died; further, that immediately after the collision, Kosecoff procured the key from the decedent who had it in his watch pocket.

*It is the contention of the petitioner that under the proofs submitted to the court in the instant case that the decedent, Max Gelbart, met his death from an accident arising out of and in the course of his employment.*

From the testimony submitted, it appears that the decedent was entrusted with one set of keys to respondent's place of business and that the terms of his employment charged him with the duty of opening the place of business in the morning. It is clear also that the opening of the grading station in the morning by decedent was, in fact, beneficial to the respondent for it enabled the other employes, Pulz and Hurley and the truckers, to gain admission to the place of business before the manager, Wiedeke, who had the only other set of keys, arrived. Now particularly on the day of the accident, being a Monday and one of the busy days in respondent's business, as testified to by its manager, it was necessary for decedent to arrive early and open the station. On that day Kosecoff had to enter the place of business and prepare the empty cases and shipping tags preparatory to the arrival of the trucks. And as has been heretofore mentioned, the other employes had to gain admission to the place of business. All of these functions were in the usual and customary course of the conduct of respondent's business and necessitated an act by the decedent custodian of the keys, namely the opening of the building.

It is contended that the custody of the key by the decedent and its personal transmission by him each morning to the place of business where he performed the act of opening the station, constituted, at every stage from his leaving his house, an act for the benefit of his employer and was within the course of his employment. For without the key and without the operation of opening the place of business, the activities

of respondent's business would be suspended until the arrival of Wiedeke at ten A. M.

It is to be borne in mind also in this connection that the decedent as custodian of the key was subject to call at any time to open the grading station—an obligation of employment on his part only beneficial to respondent itself.

In construing the Workmen's Compensation act, it should be remembered that the statute is remedial and should be liberally and broadly construed. *O'Mara* v. *Kirsch,* 106 *N. J. L.* 151; 147 *Atl. Rep.* 511; *Schmid* v. *Stanton Forging Co.,* 104 *N. J. L.* 471; 142 *Atl. Rep.* 4; *Bodnarik* v. *Empire Floor, &c., Co.,* 8 *N. J. Mis. R.* 718; 151 *Atl. Rep.* 908; *Steers, Inc.,* v. *Turner Construction Co.,* 104 *N. J. L.* 189; 139 *Atl. Rep.* 42. Therefore, what accidents should be held compensable "as arising out of the course of employment" have been given a broad interpretation.

In this connection a construction has been placed upon our statute that it is not necessary that the employe be actually engaged, at the time of an accident, in prosecuting his designated work in order to obtain compensation. He need only be doing some act reasonably necessary and incidental to his employment. *Stellas* v. *Western Union Telegraph Co., Inc., supra; Bryant* v. *Fissell,* 84 *N. J. L.* 72; *Foley* v. *Home Rubber Co.,* 89 *Id.* 474.

And as was stated in *Rafferty* v. *Dairymen's League, &c., Association, Inc.,* 16 *N. J. Mis. R.* 363 (at *p.* 366) ; 200 *Atl. Rep.* 493, by Stahl, C.:

"The words 'out of' relate to the origin or cause of the accident; the words 'in the course of,' to the time, place and circumstances under which the accident takes place. The former words relate to the character of the accident, while the latter words relate to the circumstances under which the accident takes place. An accident comes within the latter words if it occurs while the employe is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during the time to do that thing. The accident, in order to arise 'out of' the employment, must be of such nature the risk of which might have been contemplated by a reasonable person

when entering the employment, as incidental to it. A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service."

And. as was stated by Perskie, J., in *Dubit* v. *Sheffield Farms Co., Inc.,* 118 *N. J. L.* 411 (at *p.* 418); 193 *Atl. Rep.* 546:

"As we have seen, the result of decedent's making deliveries in his own car was a practice which was obviously beneficial both to the employer and employe. It was, therefore, only natural that it should have developed into a common practice—a practice which had for its objective the fruits of the contract which each party made for himself. Death resulting from an accident which occurred under such circumstances is one arising out of and in the course of the employment; it is compensable. *Rubeo* v. *Arthur McMullen Co.,* 117 *N. J. L.* 574; 189 *Atl. Rep.* 662."

And further as was stated by Heher J., in *Rubeo* v. *Arthur McMullen Co.,* 118 *N. J. L.* 530 (at *pp.* 531, 532); 193 *Atl. Rep.* 797:

"When the accident happened, the essential statutory relation, in popular understanding and intent, had not been terminated. The line of delimitation is not so finely drawn. The provision of transportation, if not the subject of an express or implied undertaking binding under any and all circumstances, was plainly within the contemplation of the parties, at the time of the making of the contract of employment, as the thing to be done when in special circumstances the common interest would thereby be subserved. But, however this may be, the furnishing of this accommodation grew, with the knowledge and acquiescence, if not indeed the direction, of the employer, into a practice grounded in mutual convenience and advantage. The deceased employe, while not directly concerned, in the journeys to and from, with the performance of the work for which he was employed, was yet engaged in that which, by mutual consent, was considered as incidental to the employment. It was a thing so intimately related to the particular service contracted for as to be deemed, in common parlance, a part of it. This is the legis-

lative sense of the term 'employment.' The requisite relation of master and servant continued during the journey; and the hazards thereof are therefore regarded as reasonably incident to the service bargained for."

In cases containing analogous circumstances recovery has been held for acts of employes occurring outside the place of business of the employer and under circumstances very similar to the instant case.

In *Kromley* v. *Board of Education*, 13 *N. J. Mis. R.* 627; 180 *Atl. Rep.* 546, compensation was allowed to a school janitor returning home from evening church services, who decided to look after the school fires because of a sudden fall in temperature. He suffered injury while going home for the school keys. The Kromley case would appear to be on all fours with the liberal construction placed upon the statute by the courts of this state in permitting an award for injuries received while performing services incidental to the employment and which appeared to have occurred during acts of performance by the injured party beneficial to the employer as has been heretofore pointed out in the decisions above.

In *Barkman* v. *Meyer*, 12 *N. J. Mis. R.* 287, recovery was permitted to the petitioner who had been struck by an automobile while carrying pails back to the farm, it being shown that it was part of the petitioner's duties to take milk pails home and wash them.

Other cases concerning the allowance of compensation for injuries received during acts incidental to furthering the employment at times when the employe was actually doing some act purely for his own personal convenience, but which was closely connected with his employment are also probably familiar to the court. *Ramsey* v. *Leahey*, 102 *N. J. L.* 513; 134 *Atl. Rep.* 91; *affirmed*, 103 *N. J. L.* 501; 135 *Atl. Rep.* 919; *Rachels* v. *Pepoon*, 5 *N. J. Mis. R.* 122; 135 *Atl. Rep.* 684; *affirmed*, 104 *N. J. L.* 183; 139 *Atl. Rep.* 923.

It is interesting to note that the argument claimed by the respondent in the instant case, that the decedent, Max Gelbart, cannot recover through the petitioner in that at the time of the accident, he was in the same category as the traveling public and, consequently, respondent is not liable for injuries

on a public highway, was raised in the case of *Dubit v. Sheffield Farms Co., Inc., supra,* but that Perskie, J., in liberally construing the statute of this state disregarded such argument in holding that the act of the employee at the time of the accident was beneficial both to the employer and employe as hereinbefore mentioned.

In the recent case of *Grotsky v. Charles Grotsky, Inc.,* 121 *N. J. L.* 461; *2 Atl. Rep.* (*2d*) 149, Case, J., while stating the general rule that compensation will not be awarded for injuries resulting from accidents happening to a workman while he is on his way to or from work, inferentially held that the decedent, who had been instructed to return the keys of the store in which he was working to the owner, would have been entitled to a recovery had the factual proofs indicated that at the time of the accident he was actually on his way to his employer's home with the keys. In denying compensation in the Grotsky case the court, of course, found as a fact that at the time of the accident, the decedent was not in the act of returning the keys to the owner, but was actually returning to his own home.

It is a reasonable inference and I find as facts: That the custody of the keys by the decedent in the instant case was an act obviously beneficial to the employer; that the accident occurred while he was traversing the direct route from his home to respondent's place of business and while he was in the act of procuring the keys—an act beneficial only to the respondent; and that in the procuring of the keys entrusted to his care and custody, he was performing an act incidental to his employment and for the benefit of his employer; that the accident occurred at a time when he was performing duties within the course of his employment; and that the accident arose out of and in the course of such employment and within the construction of the statute of this state as annunciated by the decisions of this and the other courts of this state; that the decedent's wages were $30 a week; that the petitioner was, at the time of said accident, the wife of the decedent, living together with him and totally dependent upon him.

It was stipulated on the record that there is no dispute respecting the medical facts and that the decedent, Gelbart, died of the injuries due to the accident hereinbefore described. The respondent, however, questions the reasonableness of the medical charges for services rendered to the decedent during his last illness resulting from said accident.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

There is no doubt in this case, and I so find, that the respondent had knowledge of the injuries received by the decedent and of his death, within the time prescribed by the Workmen's Compensation act.

It is, therefore, ordered on this 7th day of July, 1939, that judgment final be entered in favor of the petitioner and against the respondent.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

HARRY S. MEDINETS,
*Deputy Commissioner.*