BERTHA MICIELI, WIDOW OF JOSEPH MICIELI, PETI-
TIONER-RESPONDENT, v. ERIE RAILROAD COMPANY,
RESPONDENT-PROSECUTOR.

Argued January 20, 1943—Decided August 11, 1943.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutor, *Hobart, Minard & Cooper* (*John J. Gaffey,* of counsel).

For the respondent, *Koch & Simon* (*Nathan Rabinowitz,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. This is a workmen's compensation case. *N. J. S. A.* 34:15–1, *et seq.* Broadly stated, the basic question for decision is whether the deceased employee died as the result of an accident arising out of and in the course of his employment. More specifically stated, the question for decision is whether the terms and conditions of the pass given to and accepted by decedent at the time of his employment and used by the decedent when he suffered fatal injuries while on his return from work to his home in one of prosecutor's public passenger trains should have barred, as urged, his widow's claim petition for compensation.

The meager facts which give rise to the stated question are stipulated. From the stipulated facts we learn that at the time of the accident (January 6th, 1938) and for two years prior thereto decedent, whose sole dependent was his wife (respondent here) with whom he lived in Paterson, New Jersey, was engaged and worked for prosecutor railroad company as a baggage porter at its terminal in Jersey City, New Jersey. Decedent worked six days a week from 10:00 P. M. to 7:00 A. M., at the rate of fifty cents an hour and earned $24 a week. His rate of pay was the same as that of any employee living in Port Jervis, New York, or in Jersey City, New Jersey. His duties were confined entirely to Jersey

City and consisted of handling, sorting, routing and loading of mail, newspapers and baggage arriving at Jersey City from New York and destined to points within and without the State of New Jersey.

On January 6th, 1938, decedent completed his work at his usual time (7:00 A. M.) and promptly thereafter boarded one of prosecutor's public trains which traveled from Jersey City to Paterson, New Jersey. As the train was moving into the Paterson station, at 7:33 A. M., at a speed of approximately fifteen miles an hour, decedent was seen to jump off the train, run along the platform holding on to a grab handle, lose his footing, fall and roll under the train. He sustained fatal injuries.

At the time of the accident decedent had in his possession a railroad pass which had been given to him by prosecutor at the time of his employment. The pass reads as follows:

(Front)

"Erie Railroad Company.

New York, Susquehanna and Western Railroad Co.

The New Jersey & New York Railroad Co.

Eastern District.

Not good on trains 1 and 2 except between Hornell and Buffalo, N. Y. 1937-1938

Pass Mr. Joseph Micieli

Account Extra Baggage porter (AIK)

Between stns. Jersey City, N. J. and Paterson, N. J.

Until December 31st, 1938.

Valid when countersigned by A. E. Hoffman.

Countersigned        Unless otherwise ordered and subject to
A. E. Hoffman.       conditions on back.

W. M. White, General Manager."

(Reverse side)

"Conditions"

"A person accepting and using this free pass thereby assumes all risks of accidents, death, personal injury and loss of and damage to property whether caused by negligence of any railroad company named on the other side or negli-

gence of any officer, agent or employee thereof or otherwise.
As a condition precedent to the issuing and use of this pass, each recipient represents that he or she is not prohibited by law from receiving such free transportation and *agrees that this pass is gratuitously, and furnished no part of consideration for services* and that none of said railroad companies shall be considered as a common carrier as to the transportation furnished thereon. [Italics supplied.]

This pass is not transferable, and if presented by any other than an individual named thereon, the conductor will take up pass and collect fare. This free pass is accepted and used upon the above conditions.

(Signed) Joseph Micieli.

This pass will not be honored unless signed in ink or indelible pencil by the person or persons to whom issued."

Although the parties by their stipulation reserved the right "to introduce evidence in connection with the conditions under which the pass was issued," nonetheless, for reasons not made to appear, no such evidence was introduced.

On the facts as stipulated, the deputy commissioner in the Bureau, on the holding in the cases of *Rubeo* v. *Arthur McMullen Co.*, 117 *N. J. L.* 574; 189 *Atl. Rep.* 662; conformed to 118 *N. J. L.* 530; 193 *Atl. Rep.* 797; *affirmed,* 120 *N. J. L.* 182; 198 *Atl. Rep.* 843, and *Lehigh Navigation Coal Co.* v. *McGonnell,* 120 *N. J. L.* 428; 199 *Atl. Rep.* 906; *affirmed,* 121 *N. J. L.* 583; 3 *Atl. Rep.* (*2d*) 581, determined that decedent's death was the result of an accident which arose *out of* and in the course of his employment. *Micieli* v. *Erie Railroad Co.,* 18 *N. J. Mis. R.* 466; 14 *Atl. Rep.* (*2d*) 56.

On appeal to the Passaic County Court of Common Pleas, the judge of that court affirmed in all things the determination and rule for judgment in the Bureau. 20 *N. J. Mis. R.* 494; 29 *Atl. Rep.* (*2d*) 412. Prosecutor was allowed a writ of *certiorari.*

Although we do not seem to have a case "directly in point" (*Cf. Fisher* v. *Tidewater Building Co.,* 96 *N. J. L.* 103,

104; 114 *Atl. Rep.* 150; *affirmed,* 97 *N. J. L.* 324; 116 *Atl. Rep.* 924; *Laverty* v. *Ludington Management, Inc.,* 110 *N. J. L.* 410, 413; 166 *Atl. Rep.* 137), nevertheless, we have set down well defined principles. The general rule of law is that injuries sustained by a workman when going to or returning from his place of work are not considered as arising out of and in the course of his employment. *Rubeo* v. *Arthur McMullen Co., supra; Grady* v. *Nevins Church Press,* 120 *N. J. L.* 351, 355; 199 *Atl. Rep.* 578; *Grotsky* v. *Charles Grotsky, Inc.,* 121 *N. J. L.* 461; 3 *Atl. Rep.* (2d) 149; *affirmed,* 124 *N. J. L.* 572; 12 *Atl. Rep.* (2d) 856. This rule, however, has its exceptions. Injuries sustained by a workman while he is provided with transportation when going to or coming from his work are considered as arising out of and in the course of his employment when such transportation, for examples, is the result of an "express agreement" between the employer and his workman, or when it has ripened into a "custom" to the extent and it is "incidental to," and "part of," the "contract of employment," or when it is with the "knowledge and acquiescence of the employer," or when it is the result of a "continued practice" in the "course of the employer's business" and which practice is "beneficial to both employer and employee." *Rubeo* v. *Arthur McMullen Co.,* 117 *N. J. L.* 578, 579, and same case, 118 *N. J. L.* 532; see 21 *A. L. R.* 1223; 62 *A. L. R.* 1438; *Cicalese* v. *Lehigh Valley Railroad Co.,* 75 *N. J. L.* 897; 69 *Atl. Rep.* 166; *Depue* v. *George D. Salmon Co.,* 92 *N. J. L.* 550; 106 *Atl. Rep.* 379; *Fisher* v. *Tidewater Building Co., supra; Matthison* v. *Payne,* 98 *N. J. L.* 87; 118 *Atl. Rep.* 771; *affirmed,* 99 *N. J. L.* 285; 122 *Atl. Rep.* 926; *Laverty* v. *Ludington Management, Inc., supra.*

Thus whatever may be the rule of law elsewhere (see *Tallon* v. *Interborough Rapid Transit Co.,* 232 *N. Y.* 410; 134 *N. E. Rep.* 327—a four to three decision), it is clear that with us the basis for the application of the exceptions to the general rule is not made to rest upon such refinement as to whether the instrumentality of transportation employed is one of a private nature and for the exclusive use of the workman (*Rubeo cases, supra; Laverty* v. *Ludington Man-*

*agement, Inc., supra*), or whether the instrumentality of transportation employed is of a public nature, and for the general use by the public (*Fisher* v. *Tidewater Building Co., supra; Lehigh Navigation Coal Co.* v. *McGonnell, supra*). Rather is the basis for our application of the exceptions to the general rule made to rest upon the conduct, the action of the parties with relation to the transportation of the workman to and from his work. Thus whether that conduct, that action, constitutes the relation of master and servant depends upon the particular facts of each case considered and determined. In this fashion, we give force and effect to the legislative mandate liberally to construe our Workmen's Compensation Act.

Before considering the facts in the case at bar, we desire to digress long enough to observe that we would ordinarily remand the case to the Bureau to take testimony, in accordance with the stipulated reservation, as to the conditions under which the pass was issued. But since no such testimony was supplied in the first instance, we assume that it was not available. Hence nothing is to be gained in so doing. At all events, respondent, represented by counsel, chose to submit her cause as stipulated. She stands or falls on that stipulation.

We turn to the facts. Our careful study of the facts as stipulated and the proper inferences to be drawn therefrom, admeasured by the judicial yard stick of the "preponderance of probabilities according to the experience of mankind" (*Cf. Gilbert* v. *Gilbert Machine Works, Inc.*, 122 *N. J. L.* 533, 538; 6 *Atl. Rep.* (2*d*) 213), satisfies us that respondent proved her right to compensation.

Concededly, prosecutor gave decedent the pass at the time he was employed about two years prior to his death. Prosecutor knew, or is charged with the knowledge, by the very words of the pass, that decedent lived in Paterson, New Jersey. It is, moreover, conceded by counsel for the parties in their respective briefs, notwithstanding the conflicting language of the pass, that "it [the pass] was for use between Jersey City and Paterson only." And although it is stipulated that the basic salary of the decedent was the same

wherever he chanced to live, prosecutor charged the issuance of the pass to its "extra baggage account" between the stations for which it was to be used. As so issued and treated, the pass was accepted and used by decedent.

Apart, however, from the amount ($24) of decedent's weekly wage, common experience of mankind preponderates the probability that decedent used that pass during his employment while going to and from his work prior to the accident with the knowledge and acquiescence of prosecutor, and that he so used it at the time of his fatal accident.

We need hardly labor the point that the pass was financially beneficial to decedent. It relieved him of his transportation costs. Again common experience of mankind preponderates the probability that the issuance of the pass was beneficial to prosecutor's business as a common carrier. It necessarily attracted workers of decedent's limited earning power, even if they lived some distance away from their place of work. It undoubtedly created and helped to maintain that humane relation between employer and employee which is beneficial and vital to their mutual social and economic welfare. If it were otherwise, common experience, common sense dictates that the pass would not have been issued to decedent.

We do not share the view that the obligatory use of the pass was, as urged, a condition precedent to the requisite relation of master and servant between the parties. The issue here is not whether decedent could have used the pass while returning home from his work. The issue here is whether the fatal injury which decedent suffered while so using the pass is compensable. Decedent had the unquestionable right to use the pass as he did use it. He was in prosecutor's public train by virtue of a condition incidental to and part of his contract of employment as evidenced by his pass. Thus he was where he had a right to be under his contract of employment. *Cf. Bryn* v. *Central Railroad Company of New Jersey,* 114 *N. J. L.* 534; 177 *Atl. Rep.* 857; *affirmed,* 115 *N. J. L.* 508; 180 *Atl. Rep.* 874. The fact that he was where he had the right to be by virtue of a permissive rather than an obligatory use of the pass is beside

the point. There is, moreover, nothing in the record remotely to indicate that prosecutor lacked such power as it chose to exercise over decedent while on its train. *Cf. Rojeski* v. *Pennington Dairy Farms, Inc.,* 118 *N. J. L.* 335, 337; 192 *Atl. Rep.* 746.

We are, therefore, of the opinion, and so hold, that, under the circumstances exhibited, the issuance of the pass and its use by decedent did not create the relation "analogous to that of bailor and gratuitous bailee" (see cases collated in *Demarest* v. *Palisades Realty, &c., Co.,* 101 *N. J. L.* 66, 69, *et seq.;* 127 *Atl. Rep.* 536). For here the issuance of the pass and its use by decedent "was a thing so intimately related to the particular service contracted for as to be deemed, in common parlance, a part of it. This is the legislative meaning of employment." The "requisite relation of master and servant" continued on decedent's homeward journey and legally the "hazards thereof are regarded as reasonably incident to the services bargained for." *Rubeo* v. *Arthur McMullen Co.,* 118 *N. J. L.* 530, 532.

Nor does the fact that the pass reads that it was given "gratuitously and furnished no part of the consideration for [decedent's] services" lead to a contrary result. The pattern of the pass does not appear to us to have been designed to determine the status of an employee under our Workmen's Compensation Act. Obviously, it seeks to exclude the value of the pass in determining decedent's weekly wage, it provides against liability for prosecutor's negligence, and against its being considered as a common carrier as to the transportation furnished by the pass. The pattern of the pass seems to us to have been designed to determine the status of the employee under the Federal Employers Liability Act. *U. S. C. A., Title* 45, § 51. In this connection, it is interesting to observe that prosecutor argued below, among other things, that the Bureau was without jurisdiction because the "work of decedent was interstate in character," and, therefore, the claim petition should have been dismissed.

But be that as it may, the award of compensation to the widow, notwithstanding the aforestated provisions of the

pass, does not, as suggested, impair the obligation of contract or deprive prosecutor of its property without due process of law either under our state or federal constitution.

Our Workmen's Compensation Act was not designed "to impose" nor does it impose "workmen's compensation" upon employer and employee "against their will." *In re Spencer Kellogg & Sons,* 52 *Fed. Rep.* (*2d*) 129, 133. Both are free to contract extra all of its provisions. This they did not do. Hence it "is presumed" that they have "accepted" its elective compensation provisions and "have agreed to be bound thereby." *N. J. S. A.* 34:15–9. Nothing short of a full compliance with these provisions is permissible. We must bear in mind that our act bespeaks the policy of the state. It is a policy, in the words of Mr. Justice Heher speaking for our Court of Errors and Appeals, that is "grounded in social and economic considerations." These considerations must be respected and observed in the contractual undertakings, between employer and employee. Such a contract is "of concern to the state." It affects the public, the common interest, which interest "vindicates the incidental restraint upon the liberty of contract." *Cf. P. Bronstein & Co., Inc.,* v. *Hoffman,* 117 *N. J. L.* 500, 506, and cases there collated; 189 *Atl. Rep.* 121. There is nothing to justify the claim that the due process clause was not fully satisfied in the determination of the cause.

Decedent was not, at the time of the fatal accident, actually engaged in interstate commerce. *Fury* v. *New York and Long Branch Railroad Co.,* 127 *N. J. L.* 354; 22 *Atl. Rep.* (*2d*) 286, *certiorari* denied, 315 *U. S.* 815; 86 *L. Ed.* 1243.

The judgment is affirmed, with costs.