THE BANK OF SPRINGFIELD, Respondent, v. THE FIRST NATIONAL BANK OF SPRINGFIELD, Appellant.

St. Louis Court of Appeals, April 10, 1888.

1. BANKS AND BANKING—PAROL STATEMENT THAT A CHECK IS GOOD. A parol representation by the bank upon which a check is drawn that the check is good is not equivalent to a certification, and does not bind the bank to pay it whenever presented until barred by limitation ; nor does it release the holder from the duty of proper diligence in presentment for payment. It binds the bank to nothing more than that the statement was true at the time when it was made.

2. PRACTICE, APPELLATE—VARIANCE—JUDGMENT UPON FACTS PROVED. Where the objection of variance between the petition and the proofs was not raised at the trial, the only variance remaining open to complaint is, that the allegations were unproved in their entire scope and meaning. If the petition states facts which, if true, render the defendant liable in law, and if, upon undisputed proof of such facts and no lawful defence shown, a judgment is rendered declarative of the necessary legal inference therefrom, the judgment may properly be affirmed without examination of the instructions given or refused.

APPEAL from the Greene Circuit Court, HON. W. D. HUBBARD, Judge.

*Affirmed.*

JAMES R. VAUGHAN, for the appellant : The certificate of a bank that a check is good is equivalent to acceptance. Morse on Banking [2 Ed.] 308–13–14 ; Bigelow on Estoppel [2 Ed.] 412–16. No particular form of certification is necessary. The mere verbal statement of the bank officer that the check is good will constitute a certification. Daniel on Neg. Inst., sec. 1606, p. 527 ; Morse on Banking [2 Ed.] 316 ; Bigelow on Estoppel, 412–17 ; *Pope v. Bank*, 59 Barb. 226 ; *Espy v. Bank*, 18 Wall. 604. The appellant, after it had been informed by the plaintiff' sofficials that the check was all right,

in good faith took the same from Maggio in payment of the draft on him, and remitted the money to Reeme & Company, and the Bank of Springfield was thereby estopped and forbidden by law to deny the want of funds or their liability to pay the check. Bigelow on Estoppel [2 Ed.] 412 *et seq.; Meads v. Bank*, 26 N. Y. 143. The petition avers a contract, contains an averment that defendant wrongfully and unlawfully failed to pay a balance to plaintiff, and nowhere avers any conversion of plaintiff's checks, while the evidence, if it shows anything, shows a conversion. For the above reasons, there is a failure of proof or fatal variance in plaintiff's case between the allegations of the petition and the proofs. *Watson v. Stever*, 25 Mich. 386; *Carson v. Cummings*, 69 Mo. 325; *Sandeen v. Railroad*, 79 Mo. 278; *Moses v. Arnold*, 43 Iowa, 187. A mistake as to the condition of Maggio's account, or failure to charge Maggio & Company, could not affect appellant's rights. *Espy v. Bank*, 18 Wall, 621; *Bank v. Bank*, 16 N. Y. 126; *Bank v. Leach*, 52 N. Y. 350; *Cook v. Bank*, 52 N. Y. 96. The court erred in admitting Bentley's testimony giving his conclusions and opinions as to the meaning of the telephonic communication between banks of Springfield like that on the twentieth of July. A custom must be proven by facts and actual occurrences and not by opinions. A positive rule of law or a legal liability cannot be changed by proof of a custom. A custom cannot be proven by one witness, even where he is uncontradicted. Clark's Brown on Customs [1 Am. Ed.] 146–52; *Kleekamp v. Meyer*, 5 Mo. App. 444; *Cook v. Bank*, 52 N. Y. 96.

MASSEY & McAFEE, for the respondent.

THOMPSON, J., delivered the opinion of the court.

The plaintiff is a bank doing business at North Springfield in this state, and the defendant is a national bank doing business at Springfield, about a mile and a half distant from the plaintiff bank. The substance of

the petition is, that the plaintiff and the defendant made an exchange of checks between each other, and that in the exchange the defendant became indebted to the plaintiff for the balance of $187.50, which the defendant refused to pay. The answer, after a general denial, sets up a state of facts which was supported by uncontradicted evidence, and which was as follows:

The defendant received from a correspondent in Kansas City for collection a draft for $187.50 drawn upon B. Maggio by the name under which he did business, which was B. Maggio & Company. Maggio tendered to the defendant in payment of the draft, the check of B. Maggio & Company drawn upon the plaintiff bank for the amount of the draft. Maggio's financial standing was not good, and he was distrusted by the officers of the defendant, who, therefore, judged it prudent before receiving the check to inquire of the plaintiff bank over the telephone whether it was good. They accordingly called up the plaintiff over the telephone, and received in reply to their inquiry the statement that the bookkeeper of the plaintiff was sick, but that the plaintiff would shortly inform them whether the check was good. About ten minutes later the plaintiff called up the defendant, and stated that the check was "all right." The defendant thereupon received the check in payment of the draft, delivered the draft to Maggio, and at once remitted the amount of it, less charges, to their correspondent at Kansas City. This was on the twentieth of July, 1885. The uncontradicted evidence is, that the account of B. Maggio & Company in the plaintiff bank was good for the check on that day and on the following day, and that if the check had been presented on either of those days it would have been paid. But it was not presented until the twenty-second, on which day it seems that Maggio suspended payment. When it was presented in the usual course of the business of exchanging checks which took place

between the two banks, the messenger of the plaintiff bank, under instructions which he had received from his superiors, informed the messenger of the defendant bank that the check would not be paid. The agent of the defendant protested that the defendant had received the check on the faith of the plaintiff's assurance, delivered over the telephone, that it was good, and insisted on its payment. Thereupon the messenger of plaintiff took the check for the purpose of consulting his superiors about it. When informed of what he had done they returned the check to the defendant bank refusing to receive it, and the defendant in its turn refused to receive it back. In the exchanges of the day the defendant had become indebted to the plaintiff in a sum equal or greater than the amount of this check, and the defendant thereupon refused to make good to the plaintiff its balance equal to the amount of this check, and the plaintiff prosecutes this suit for the same.

Down to this point in the testimony there was no conflict upon any matter of substance. The only substantial conflict in the testimony related to the evidence of a custom among the bankers of Springfield and North Springfield, touching representations made over the telephone that checks were good. Against the objection of the defendant, the plaintiff's cashier was permitted to testify in substance that such a representation over the telephone, made by one bank to another, in response to its inquiry, was understood to mean that the check was good at that time ; that such replies were not certifications of checks, but were only regarded as information to guide the discretion of the inquiring bank as to whether it would receive the check. An officer of the defendant, on the other hand, testified that there was no such custom. As the testimony of disinterested bankers was not given upon this question, if it were material, we should feel inclined to hold that such a custom had not been established. But we regard it as immaterial, because the statement made by the plaintiff's cashier as

to the customary understanding of the bankers at those places is substantially a statement of what we understand to be the law independently of any custom.

The certification of a check by the bank upon which it is drawn is analogous to the acceptance of a bill of exchange. The check itself is, when presented to the banker and accepted by him, an appropriation of so much of the funds of the drawer in favor of the holder. It produces a complete novation in respect of the amount named in it; the holder is substituted in the place of the drawer as the creditor of the bank; the bank charges the amount of the check against the drawer on his account, and becomes primarily liable to the holder, and remains so liable until discharged by payment, release, or the statute of limitations. *Meads v. Merchants' Bank*, 25 N. Y. 143. A bank, by certifying a check to be "good", creates a simple and unconditional obligation on its part to pay the same to the holder on demand, and demand may be made by him at any time which may suit his convenience, and no laches are imputable to him by reason of delay. *Willets v. Bank*, 2 Duer (N. Y.) 121.

Such being the effect of the certification of a check, the next inquiry is, whether these important consequences can be held to flow from a mere representation over the telephone in response to an inquiry, to the effect that a check of a customer for a certain amount is good. After a diligent search we have found no decision which so holds. It may be conceded that a bill of exchange may be accepted by parol where there is no statute requiring it to be accepted in writing. 2 Rand. Com. Paper, sec. 606. It may be conceded also that a bank check possesses several of the incidents of an inland bill of exchange. *Cruger v. Armstrong*, 3 Johns. Cas. 5; *Harker v. Anderson*, 21 Wend. 372; *Woodruff v. Bank*, 25 Wend. 673; *Murray v. Judah*, 6 Cow. 484. But it is not a bill of exchange in the ordinary sense of the term. *Matter of Brown*, 2 Story,

502; *Bank v. Bank*, 10 Wall. 647; *Espy v. Bank*, 18 Wall. 604. Statutes relating to bills of exchange do not necessarily include bank checks. For instance, it was held that a bank check was not within the act of congress of July 6, 1797, requiring "foreign or inland bills of exchange, promissory notes, or other notes for the security of money," to be stamped. *Conroy v. Warren*, 3 Johns. Cas. 259.

But if it were a bill of exchange, the defence here set up must entirely fail, because under our statute there can be no acceptance of a bill of exchange except in writing signed by the party accepting or his lawful agent. Rev. Stat., sec. 533. Nor can the payee of a draft enforce against the drawee a parol promise to accept. *Flato v. Mulhall*, 72 Mo. 522; s. c., affirmed, 4 Mo. App. 476. Whether a bank check is within the letter of this statute or not, it is certainly within its policy. The highest courts in this country and in England have regretted the decisions which give original sanction to the doctrine that there can be a verbal acceptance of a bill of exchange, or a promise to accept, which is equivalent to a written acceptance. *Johnson v. Collings*, 1 East, 103; *Boyce v. Edwards*, 4 Pet. 122. As before stated, we find no judicial authority which extends the doctrine of the parol acceptance of bills of exchange to the case of bank checks. In *Espy v. Bank*, *supra*, a forged check was presented to a bank whose proper officer examined it and stated to its custodian that it was good and directed him to send it through the clearing house. It was sent through the clearing house and was paid by the bank before the forgery was discovered. Notwithstanding the statement of its officer that it was good, and notwithstanding the unquestioned fact that the holder had accepted it in the payment of an indebtedness on the faith of this statement, the bank brought an action against the holders and recovered back the amount so paid, and the judgment was affirmed in the Supreme Court of the United States. *Espy v.*

*Bank*, 18 Wall. 604. It is true that in that case the circuit judge instructed the jury that "a verbal certification of a check is equally valid with a written certification, and constitutes a contract obligatory on the party giving the certification, the consideration of which is the property parted with by the party receiving the certification on the faith of the certification." But the Supreme Court declined to pass upon this "very grave question," because the unsuccessful party having had the benefit of this instruction, the question did not necessarily arise in the case.

The object of certifying a check is to give it on its face such a value that it may be used as money in the payment of debts by the holder. This object is not reached by a parol certification.

Again, the drawer of a check can countermand its payment before payment is actually made, he being liable to the drawee for the consequences of his act. *Albers v. Bank*, 85 Mo. 173 ; s. c., affirmed, 9 Mo. App. 59. But what becomes of this rule if the drawee makes the bank his creditor by merely enquiring over the telephone and getting an answer that the check is good?

These considerations show the extreme difficulty of taking the view that there can be any such thing as a liability *ex contractu* growing out of a parol representation that a check is good. But other and stronger grounds press us to the same conclusion. The certification of checks is well known to be one of the greatest dangers to the integrity of their funds with which bankers have to contend. The power to certify checks, unless guarded and restrained, is nothing less than the power of a corrupt teller or other servant to give away the funds of the bank. Such abuses have been produced by the exercise of this power that prudent banks, as is well known, have generally discontinued the practice of certifying checks, and have substituted therefor the practice of taking up the check tendered for certification and issuing in its place their own cashier's check, which is tantamount to their own promissory note. The assets

of a bank are a trust fund for its depositors and stock-holders. If we establish as a rule of law the principle that these funds can be pledged by the parol statements of the tellers or other agents of the bank to the effect that a check held by an inquirer is good, we establish a principle which would greatly jeopardize these trust funds and which we have no doubt would startle the business community. In cases which involve but a small amount like the case before us, the truth would be told by the witnesses on both sides, as it has been told here ; but the rule which we make for one hundred and eighty-seven dollars, would, if sound in law, be a rule for one hundred and eighty-seven thousand dollars. The result of such a rule would be that in cases involving large amounts of money the assets of a bank would become the mere sport of perjured witnesses. Upon any ground, then, we must hold that the statement over the telephone by the agent of the plaintiff that the particular check in question was all right, was not an agreement on the part of the plaintiff that it should be paid at all events when-ever presented within the period of the statute of limita-tions, which, as we have seen, is the effect which the law ascribes to the certification of a check.

It was, nevertheless, a representation of a fact. And, without doubt, if the fact had not been true, as represented, and the defendant had nevertheless, con-fiding in the representation, parted with its money on the faith of it, the plaintiff would be liable in an action *ex delicto* to restore to the defendant what it had lost by reason of the misrepresentation. Such an action would proceed upon the ground of fraud, and would, of course, involve an inquiry into the authority of the agent of the plaintiff to make the representation. That authority is not questioned here. But this principle has no application here, because, as shown by the uncontradicted evidence, the representation was true. The check was good when the inquiry was made, and it was good during that entire day and the day following.

In view of the confessed knowledge which the defendant's officials had of the doubtful standing of Maggio, the exercise of reasonable diligence would have required them to present the check to the plaintiff immediately for payment, and there was no obstacle, except the intervening distance of a mile and a half traversed by a street railway, which prevented them from doing so. Not having done so, but having waited the convenience of two days' delay, they, and not the plaintiff, must bear the loss. Moreover, it does not appear that it was at all necessary for them at once to make the check their own. They might have withheld the remittance to their correspondent until it was in fact collected, provided they had proceeded with reasonable diligence in collecting it.

An argument is directed to the question that there is a substantial variance between the petition and the evidence. No objection was made at the trial on the ground of variance. If it had been it could, if found substantial, have been remedied under the statute. The only variance which is now available to the defendant is, that the evidence is such a departure from the allegations of the petition as to leave those allegations unproved in their entire scope and meaning. This, we apprehend, cannot be affirmed of the evidence in this case. The petition sets up a state of facts (though perhaps inartificially) which, if true, shows that the defendant is indebted to the plaintiff in the sum claimed. The evidence makes good these facts, and the defence set up is not good in point of law. We need not, therefore, examine the declarations of law given and refused. The judgment which was rendered by the learned judge, sitting as a jury, was the judgment of the law upon the undisputed facts.

With the concurrence of Judge Rombauer, the judgment is affirmed.