M. KELLOGG, Defendant in Error, v. CITIZENS' BANK OF AVA, Plaintiff in Error.

Springfield Court of Appeals, January 19, 1914.

1. **BANKS AND BANKING: Countermanding Payment of Check: When Permissible.** The giving of a check is not an assignment of the fund to the payee. and the drawer may countermand .its payment at any time before payment is actually made or written acceptance given by the drawee.

2. ———: **Countermanding Payment of Check Before Written Acceptance.** The cashier of a bank received about midnight certain checks from a payee, with the request that they be credited to his account when the bank opened at nine o'clock next morning. The drawer of the checks was not precluded from countermanding payment on same at any time before they were actually paid or accepted in writing. [Citing Sec. 10102, R. S. 1909.]

Error to the Douglas County Circuit Court.—*Hon. John T. Moore,* Judge.

AFFIRMED.

*J. S. Clark* and *Fred Stewart* for plaintiff in error.

The cashier of the bank, took charge of the checks in question, thus depriving the holder of the possession of same, and promised to give Holt a deposit on reaching the bank next morning. Here were such acts on the part of the bank and Holt as to pass the title of the checks to the bank, and any subsequent attempt to stop payment came too late. Kavanaugh v. Bank, 59 Mo. App. 540; Avers v. Bank, 79 Mo. 421; Bullene v. Bank, 79 Mo. 426; Bank v. Rose, 60 Mo. 585.

*Jos. V. Pitts* for defendant in error.

(1) A check is not an assignment of funds and a bank is not liable until after acceptance or certification. Sec. 10159, R. S. 1909. (2) A customer of a bank has the right to countermand the payment of a check before it is paid. Albers v. Bank, 85 Mo. 173-76; 5 Cyc. 540.

FARRINGTON, J.—This cause is here on a writ of error. The action was instituted in the circuit court of Douglas county for the purpose of recovering the sum of $180. Kellogg, the plaintiff in the trial court, prevailed.

The facts are substantially as follows: Kellogg, a short time before the cause of action accrued, moved to Douglas county and was residing with his brother on a farm a few miles from the town of Ava. On Sunday night, April 26, 1912, plaintiff and John Wash Singleton and Willis Holt and Nath Wright met in the storeroom of the J. W. Singleton Grocery Company in Ava and engaged in a game of poker. During the game it became necessary for plaintiff to have more funds, and to meet this necessity plaintiff executed four checks payable to the J. W. Singleton Grocery Company, three for fifty dollars each, and one for thirty dollars, all being drawn on the defendant bank. The game continued until after midnight and when it was over plaintiff had nothing to show for his $180 but experience and remorse. It appears that he went to his brother's home, but soon hastened back to Ava and at about dawn called at the residence of A. P. Miller, the cashier of the defendant bank, the bank on which the four checks had been drawn, and informed Miller, according to plaintiff's testimony, that he had been intoxicated the night before and was robbed of the amount of money represented by the checks, and the uncontroverted evidence is that he then and there notified Miller not to pay the checks. Miller at the time told him he was probably a little late for the reason that he already had the checks, showing them. It appears that when the game closed, John Wash Singleton took the checks out of the cash drawer of the J. W. Singleton Grocery Company and handed them to Willis Holt, and the latter, representing Singleton or the grocery company, as the case might be, took them to Miller's residence, aroused him, and told him that he wanted credit for the $180, delivering over the checks. This had occurred at about one o'clock in the morning, at which time Miller had informed Holt that plaintiff had enough money in the bank to meet the checks and that he would give Holt credit for them when the bank

opened. Holt told Miller that the reason he presented
the checks at such an hour was because he expected
to go home and would not be in town to cash them when
the bank opened. The evidence shows that after plain-
tiff made his visit to Miller and notified him not to pay
the checks, he called on an attorney of Ava who went
to the bank before it opened for business and notified
I. T. Curray, an assistant in the bank, not to pay these
checks. At about nine o'clock, Miller, the cashier, came
to the bank. He testified that he immediately made
out a deposit slip to Holt for the amount of these checks
and charged it against the account of the plaintiff, but
that he did not pay Holt the amount for the reason
that he did not know but that he might also be com-
pelled to pay the same to plaintiff. On May the first
thereafter the plaintiff drew a check for his supposed
balance of $180 on the defendant bank in favor of the
Bank of Ava, which was not honored when presented
for payment. Defendant bank refused to pay the $180
to Holt or to plaintiff and holds the fund subject to
such disposition as shall be made of it in this action.

The case made by the plaintiff is that he gave
certain checks payable to the J. W. Singleton Grocery
Company during the night of April 26, 1912; that be-
fore said checks were paid and before any certifica-
tion of acceptance, he notified the cashier of the defend-
ant bank, on which they were drawn, as well as an as-
sistant in said bank, that he countermanded them, and
that having done this, the fund deposited theretofore
by him with the defendant was still subject to his
check, and that having demanded that the amount so
deposited be turned over to him which was refused, he
is entitled to maintain this action.

The defendant bank contends that since its cash-
ier received the checks in his possession from Holt, the
holder of the checks, soon after midnight, this effect-
ually transferred the fund in the bank to Holt and

made the bank liable to Holt for the amount. In this, defendant misconceives the law.

Much is said in the briefs concerning the validity or invalidity of the checks because of the use to which the money was put that was advanced as the consideration for them. This has nothing to do with the question before us, and it is unnecessary for us to decide whether the money or the checks were played off at the game and whether the checks were tainted with illegality.

One thing is very apparent in this record, which is that both the giver and receiver of the checks acted with unusual diligence in attempting to protect such rights as might have accrued. The holder of the checks, *"Swifter than arrow from the Tartar's bow,"* caused the checks to be presented to the awakened cashier, and *"Aurora had but newly chased the night, and purpled o'er the sky with blushing light,"* when plaintiff disturbed the accommodating cashier and notified him not to honor the checks.

It has long been the settled law of this State that the giving of a check is not an assignment of the fund to the payee and that the drawer may countermand its payment at any time before payment is actually made or written acceptance given by the drawee. A check in the hands of a payee is nothing more than an order given by the party having a right to make disposition of a fund in the hands of his debtor, and if, before such order is acted upon either by payment or by written acceptance, a subsequent order is given to dishonor the original order, the subsequent order controls. It is admitted in this case that so far as the cashier doing anything *effectual* is concerned, *no steps were taken* until after the bank opened for business on Monday morning, at which time the cashier merely charged the amount to plaintiff's account and gave the credit to Holt's account. Several hours before, the bank through

its authorized agents received notice to dishonor the checks and this is not denied.

The law governing the question before us is well declared in the case of Albers v. The Commercial Bank, 85 Mo. 173, where it is held that the drawer of a check on a bank can countermand its payment before the payment is made, he being liable for the consequences of his act in doing so. [See, also, Dickinson v. Coates, 79 Mo. 250; Coates v. Doran, 83 Mo. 337; The Bank of Springfield v. The First National Bank, 30 Mo. App. 271, 277.]

The defendant bank makes the point that because its cashier retained the checks and thus deprived Holt of the possession of the same, it became liable to him. The cashier retained the checks from about one o'clock in the morning until about nine o'clock the same morning at which time he did everything he could do to transfer the title to this fund to Holt. There is no showing that if Holt had had possession of the checks during that time or at any time afterward he would have been in any better position so far as collecting the money is concerned. And even though the act of the cashier should bind the bank to Holt, that would be no defense to plaintiff's cause of action, because, as has been shown, before the checks were actually paid or *accepted in writing* (Sec. 10102, R. S. 1909), plaintiff had the right to countermand their payment, and any act of the bank working a detriment to Holt or misleading him to his damage would not be an act that would make the plaintiff's account liable for such act. The judgment of the circuit court is in full accord with the law and is therefore affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.