TREMONT TRUST COMPANY *vs.* LOUIS BURACK.

Suffolk. January 5, 1920. — April 1, 1920.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Bills and Notes,* Payment of check stopped by drawer. *Contract,* Construction, Validity. *Negligence,* Of bank, Contract avoiding results of. *Bank. Words,* "Inadvertence or accident."

The drawer of a check retains the right to countermand its payment at any time before it is paid or is certified and delivered to a *bona fide* holder for value; and, in the absence of an express contract limiting its implied obligation to the drawer, if a bank upon which the check is drawn pays the check after receiving an order to stop its payment, it does so at its peril.

The drawer of a check gave to the bank upon which it was drawn an order to stop its payment and, at the same time and at the request of the bank, signed, without

a seal, an agreement, printed on a card, that he would hold the bank harmless for the amount of the check " and for all expenses and costs incurred by it on account of refusing payment of" the check, and further, that he would not hold the bank liable "on account of payment contrary to this request if same occur through inadvertence or accident." Upon the back of the card was a printed statement that the bank received the request "with the understanding and upon the express condition" that it would "use the best methods known to it to prevent oversight and accident," but that it would "not be in any way liable for its act should said check be paid by it in the course of its business." The day following the receipt of the notice to stop payment, the check was presented to the bank and "in a manner which" the bank's bookkeeper "could not explain, it being the last day of the month, he being busy with making up accounts, the check got through" and was paid, resulting in an overdraft of the drawer's account. In an action by the bank against the drawer for the amount of the overdraft, a jury, in answer to a special question, found that the bank was negligent in failing to stop payment of the check. *Held,* that

(1) The meaning of the agreement was that the bank should be exonerated from liability to the drawer if, through the kind of negligence above described, it paid the check after receiving the notice to stop payment;

(2) The agreement was not contrary to public policy and was valid.

CONTRACT for $339.49, alleged to have been "money paid by the plaintiff at the request of the defendant." Writ in the Municipal Court of the City of Boston dated June 26, 1918.

Upon removal to the Superior Court, the action was tried before *Morton,* J. It appeared that the plaintiff had paid to the holder the amount of a check for $400, drawn upon it by the defendant, which was in excess of the amount which the defendant had on deposit with the plaintiff. This action was to recover the amount of such excess. Before the check was presented for payment, the defendant had given to the plaintiff notice to stop payment of it. The circumstances of the payment by the bank, recited in the record, were as follows: The check reached the plaintiff bank through the clearing house on the day following the notice of the defendant to stop its payment and was paid by the plaintiff. The bookkeeper of the bank testified that he received the card "notifying him to stop payment of the check and made a notation on his book, but, in a manner which he could not explain, it being the last day of the month, he being busy with making up accounts, the check got through and was debited against the defendant's account."

Other material evidence is described in the opinion. At the close of the evidence, the plaintiff asked for the following rulings, among others:

"4. If the defendant entered into the agreement [quoted in the opinion] . . . with the plaintiff then the plaintiff will not be liable for its failure to stop payment on the $400 check if the same occurred through inadvertence or accident, and if it used the best methods known to it to prevent oversight and accident.

"5. If the bank used the best methods known to it to prevent oversight and accident to stop payment on a check and in good faith paid the defendant's check for $400 through oversight or accident then it is not liable to the defendant for the amount of said check in accordance with his agreement of April 29, 1918."

The rulings were refused. A material portion of the charge to the jury is quoted in the opinion. The judge submitted special questions to the jury, which, with the answers thereto, were as follows:

"1. Was the plaintiff negligent in failing to stop payment after receiving the order to stop?" The jury answered, "Yes."

"2. Did the defendant subsequent to the payment of the check, ratify its payment?" The jury answered, "No."

The jury found for the defendant; and the plaintiff alleged exceptions.

The case was submitted on briefs.

*A. Berenson & H. U. Smith,* for the plaintiff.

*S. Hurwitz, A. Hurwitz & F. L. Simpson,* for the defendant.

PIERCE, J. This is an action of contract to recover from the defendant the amount of money which the plaintiff (hereinafter called the bank) on presentment paid to a holder of a check drawn on the bank by the defendant, in excess of the deposit standing to the credit of the defendant when the check was paid. The defendant admits that he drew the check, that it was an overdraft, and that it was paid by the bank to the holder through the clearing house. The plaintiff and the defendant are in substantial agreement that, on the day the check was issued and before presentment to or payment by the bank, the defendant notified the bank to stop payment of the check. It is also agreed that, without reading, the defendant at the time when he ordered the payment stopped, at the request of the plaintiff signed a card upon which the following agreement was printed:

"The Tremont Trust Company, Boston, Mass., will please stop payment of the above described check. The undersigned

agrees to hold the Tremont Trust Company harmless for said amount and for all expenses and costs incurred by it on account of refusing payment of said check and further agrees not to hold the Tremont Trust Company liable on account of payment contrary to this request if same occur through inadvertence or accident.

"Drawer

L. H. Burack"

On the reverse side of the card appeared the following:

"The Tremont Trust Company receives this request with the understanding and upon the express condition that it will use the best methods known to it to prevent oversight and accident, but that it shall not be in any way liable for its act should said check be paid by it in the course of its business."

In passing it is to be observed that the fact that the defendant did not read what was printed on the front and back of the card cannot affect the rights and obligations of the parties, because in the absence of fraud the defendant is assumed to have assented to all the provisions of that contract, and agreed to be bound by its terms. *Fonseca* v. *Cunard Steamship Co.* 153 Mass. 553.

By the great weight of authority, the drawer of a check retains the right to countermand its payment at any time before it is paid or is certified and delivered to a *bona fide* holder for value. *Florence Mining Co.* v. *Brown,* 124 U. S. 385. See cases collected in Morse on Banks & Banking, §§ 397–399, and in 7 C. J., Banks & Banking, § 429. *Pease & Dwyer* v. *State National Bank,* 114 Tenn. 693. In the absence of an express contract limiting its implied obligation to the drawer, the drawee pays at his peril when payment of the check has been stopped. *Usher* v. *A. S. Tucker Co.* 217 Mass. 441, 443. The consideration for an express agreement or for the implied obligation not to pay a holder of a check after payment of it has been stopped, is found in and springs from the mercantile relation of the parties and the reciprocal rights and obligations which the law attaches to that relation. The payee is not an assignee of the fund and the bank incurs no obligation to him before its acceptance of the check; his rights are against the drawer of the check. R. L. c. 73, § 206. *Carr* v. *National Security Bank,* 107 Mass. 45. *Bullard* v. *Randall,* 1 Gray, 605.

In the case at bar the jury found upon issues submitted to it that the plaintiff was "negligent in failing to stop payment after receiving the order to stop." Upon the record two decisive questions are presented: (1) Do the terms of the agreement include negligence? and (2) Is it illegal for a bank to contract against the negligence of its employees in failing to stop the payment of a check after receiving an order to stop its payment?

The word "inadvertence" in the printed agreement embraces the effect of inattention, the result of carelessness, oversight, mistake, or fault of negligence and the condition or character of being inadvertent, inattentive, or heedless. The word "accident" is used in the sense of a happening of an event without the concurrence of the will of the person by whose agency it was caused. It is manifest the quoted words were intended to exonerate the bank from the kind of negligence shown by the record and we are unable to see anything illegal, or anything opposed to public policy, in a stipulation or agreement which relieves a bank so circumstanced from the results of the mere inattention, carelessness, oversightedness, or mistakes of its employees. It follows that the plaintiff's exceptions to the charge, wherein it was said "The law, as I understand it, does not recognize the right of the bank to contract against its own negligence," was properly saved, as inconsistent with requests numbered 4 and 5, and its exceptions must be sustained.

*Exceptions sustained.*