16 N.J. Super. 430 (1951)
84 A.2d 741
ANNE S. REINHARDT, TRADING AS REINHARDT ELECTRIC CO., PLAINTIFF-RESPONDENT,
v.
PASSAIC-CLIFTON NATIONAL BANK AND TRUST COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 1951.
Decided December 4, 1951.
*433 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Walter H. Gardner argued the cause for the appellant (Messrs. Gardner & Williams, attorneys).
Mr. Edward A. Levy argued the cause for the respondent (Messrs. Levy & Levy, attorneys).
The opinion of the court was delivered by JACOBS, S.J.A.D.
This is an appeal from a judgment for plaintiff entered in the Passaic County Court.
The plaintiff was a depositor with a checking account in the defendant bank and on November 16, 1949, issued her check No. 6267 to the order of T.A. O'Loughlin, Inc., in the sum of $1,970.61. Thereafter she telephoned the bank to stop payment on the check and was told to appear in person. She went to the bank and signed a card dated December 16, 1949, and captioned "Request to Stop Payment of Check." The card contained a provision that "Should the check be paid through inadvertence, accident or oversight, it is *434 expressly agreed that the Bank will in no way be held responsible. The Bank receives this request upon the express condition that it shall not be in any way liable for its act should the check be paid by it in the course of its business." The foregoing provision was in small type and the plaintiff testified that she had not read it. Compare Peter W. Kero, Inc., v. Terminal Construction Corp., 6 N.J. 361, 368 (1951) with Demarest v. Palisades Realty, &c., Co., 101 N.J.L. 66, 72 (E. & A. 1925). On January 25, 1950, the plaintiff sent a letter to the defendant bank reading as follows:
"You have at present a stop payment notice against our check No. 6267 in the amount of $1970.61, issued on November 16th, 1949, to T.A. O'Loughlin Company.
Please be advised that we have cancelled out this check entirely and that it will under no circumstances be ordered paid in the future."
On February 1, 1950, the defendant paid check No. 6267 notwithstanding the request to stop payment and the letter of January 25, 1950. Miss Casey, a bookkeeper employed by the defendant, testified that the stop payment notice was duly recorded on the jacket over the ledger sheet of the plaintiff's account but that she "must have missed it" when she posted the check on February 1, 1950. She acknowledged that she had not read the jacket carefully. Mr. Decker, in charge of the defendant's bookkeeping department, testified that after the original stop payment notation is placed on the jacket there is no occasion for further notation because of a follow-up letter; in his language, "The more you put on there, the more confusing it becomes; and it is plain enough there. The girl should catch it. We don't deny that." When the plaintiff learned of the payment of the check she unsuccessfully sought to have its amount credited to her account and later filed her complaint in the County Court against the defendant bank. In due course both parties moved for summary judgment but their cross-motions were denied. The defendant also moved for leave to make T.A. O'Loughlin & Co., Inc., a party to the action, although apparently it did *435 not submit or file any proposed third-party complaint. Cf. Rule 3:14-1. This motion was likewise denied. Thereafter the matter came on for trial, the pretrial order was amended in open court, and the testimony was duly taken. At the close of the trial and pursuant to the plaintiff's motion the court entered judgment in her favor in the sum of $1,970.61 with interest and costs. In support of its appeal therefrom the defendant urges several points of error but relies primarily upon the release clause set forth on the card dated December 16, 1949.
It is well settled that a bank's relation to its depositor is that of debtor and its obligation is to disburse in conformity with his order. Slavin v. Passaic National Bank & Trust Co., 114 N.J.L. 341, 344 (E. & A. 1935). Where the bank receives timely notice from a depositor to stop payment on an outstanding check it is under obligation to respect it. Watson v. Merchants & Manufacturers Bank, 1 N.J. Misc. 104 (Sup. Ct. 1933). Oral notice has been held sufficient (Shude v. American State Bank, 263 Mich. 519, 248 N.W. 886 (1933)) but under our Banking Act an oral stop payment order is not effective after the first business day following its receipt and a written order is not effective for more than three months but may be renewed from time to time. R.S. 17:9A-225.
In view of the obligation imposed upon banks by the common law to refrain at their peril from making disbursement after receipt of a stop payment notice, they have often sought to restrict their liability by release clauses, as in the instant matter. See 39 Yale L.J. 542 (1930); 15 Corn. L.Q. 256 (1930). The validity of such release clauses has been the subject of conflicting judicial opinions. Thus, they were held to be effective in Gaita v. Windsor Bank, 251 N.Y. 152, 167 N.E. 203 (1929); Tremont Trust Co. v. Burack, 235 Mass. 398, 126 N.E. 782 (1920); and Hodnick v. Fidelity Trust Co., 96 Ind. App. 342, 183 N.E. 488 (1932); and were held to be ineffective in Calamita v. Tradesmens Nat. Bank, 135 Conn. 326, 64 A.2d 46 (1949); Speroff v. First Central *436 Trust Co., 149 Ohio St. 415, 79 N.E.2d 119 (1948) and Hiroshima v. Bank of Italy, 78 Cal. App. 362, 248 Pac. 947 (1926). See also 1 A.L.R.2d 1155 (1948); 34 Va. L. Rev. 834 (1948); 62 Harv. L. Rev. 1224 (1949). In the Speroff and Hiroshima cases the courts held that the release clause was against public policy and was not binding for lack of supporting consideration. In the recent Calamita case Chief Justice Maltbie, speaking for the Supreme Court of Errors of Connecticut, declined to pass on the public policy issue but nullified the clause because of the absence of consideration.
Much might be said for the view that a bank should not be permitted to impose a release clause in the form used and relied upon by the defendant. See Proposed Uniform Commercial Code (1950), section 4-103. Perhaps the bank and its depositor may, in legal contemplation, be viewed as having equal bargaining power and freedom of contract, although full recognition of modern day realities may well suggest a contrary conclusion. Cf. The Significance of Comparative Bargaining Power in the Law of Exculpation, 37 Col. L. Rev. 248 (1937); 2 Okla. L. Rev. 219 (1949). Nevertheless, the bank has been entrusted with an important franchise to serve the public and has, from time to time, received broad legislative protection. Cf. L. 1951, c. 166 (R.S. 17:9A-229.1-5). When dealing with stop payment orders the Legislature has imposed limitations on their effectiveness although, significantly, only as to time. R.S. 17:9A-225. Under the circumstances might it not be appropriate to apply to banks the legal doctrine which has deprived quasi-public enterprises such as utilities of the power to require release clauses comparable to that used by the defendant? Sheridan v. N.J. & N.Y.R.R. Co., 104 N.J.L. 622 (E. & A. 1928).
However, we need not pursue further the issue of public policy since we are satisfied that the defendant's release clause was without consideration and not binding upon the plaintiff. When the plaintiff first opened her checking account the parties entered into their debtor-creditor relation without any suggestion of a release clause. Cf. *437 Cosgrove v. Provident Institution, 64 N.J.L. 653 (E. & A. 1900). Consequently, the defendant came under contractual obligation to disburse only according to the plaintiff's order and to follow her timely instruction in the event she desired to stop payment on an outstanding check. The plaintiff's action culminating in the letter of January 25, 1950, constituted unequivocal instruction in writing to the defendant not to honor check No. 6267. The defendant's only real undertaking, which might be advanced as consideration for the release clause, was to do what it was already under clear obligation to do; by the established rule in our State that did not constitute legal consideration. Levine v. Blumenthal, 117 N.J.L. 23 (Sup. Ct. 1936). The defendant suggests that it could have terminated the plaintiff's checking account and it refrained from doing so because the plaintiff signed the release clause. But the record does not support any such understanding between the parties. On the contrary, that subject was never mentioned and presumably was not considered; in any event the suggested consideration was admittedly never "bargained for as the exchange for the promise." See 1 Restatement, Contracts, p. 81 (1932); Calamita v. Tradesmens Nat. Bank, supra.
In the light of the foregoing we may ignore the release clause and apply the acknowledged common law principles governing the defendant's responsibilities. It paid the check in violation of the plaintiff's timely written direction and came under obligation to pay her the full amount thus improperly disbursed and charged against her account. 5 Michie, Banks and Banking, p. 359 (1932); 7 Am. Jur. p. 441 (1937). This obligation was contractual and not dependent on the proof that the bank failed to exercise reasonable care after its timely receipt of the stop payment direction (but see Carroll v. South Carolina National Bank, 211 S.C. 406, 45 S.E. (2d) 729 (1947)); similarly, it was independent of any claims inter se between the plaintiff and the payee T.A. O'Loughlin & Co., Inc. Upon the record in the instant matter we are satisfied that the lower court *438 did not err in excluding evidence as to whether the plaintiff's check had been issued for merchandise received and in declining to submit to the jury the issue raised by the defendant that it "acted in good faith and exercised reasonable care."
The defendant contends that the lower court erred in denying its motion to join the payee T.A. O'Loughlin & Co., Inc., as a third party defendant. Since there is no proposed third-party complaint we have no means of ascertaining precisely what claim was sought to be asserted against the payee. In its brief the defendant urges that it ought be permitted recovery against the payee on the ground of payment by mistake or by way of subrogation. But see New Jersey v. Berrall, 70 N.J.L. 757 (E. & A. 1904); Chase National Bank of the City of New York v. Battat, 297 N.Y. 185, 78 N.E.2d 465 (1948); Restatement, Restitution, p. 138 (1937). The bank may perhaps have the right to assert a claim against the payee which would, however, involve issues wholly unrelated to the narrow controversy between the plaintiff and the bank and more readily triable in an independent proceeding. See Union and New Haven Trust Co. v. Thompson, 134 Conn. 607, 59 A.2d 727 (1948); 9 C.J.S., p. 724 (1938). Cf. 40 Harv. L. Rev. 110, 114 (1926). The defendant is still at liberty to institute such independent proceeding and does not suggest that it has suffered any substantial harm by the failure to join the payee in this action. The grant or denial of a motion for leave to proceed against a third-party defendant under Rule 3:14-1 is largely discretionary with the trial court (Cf. Ciocca v. Hacker, 4 N.J. Super. 28, 33 (App. Div. 1949); 3 Moore's Federal Practice, p. 414 (1948)), and under the circumstances presented we do not find any reversible error in its action. See Rule 1:2-20(b).
The defendant's final contention is that the trial judge improperly entertained the plaintiff's attack on the validity of the release clause because of the earlier determination by another judge on the cross-motions for summary judgment. The formal order entered on the cross-motions simply *439 denied them and expressed the court's opinion that on the showing then made there was a factual issue and neither party was entitled to judgment as a matter of law; it in no wise purported to fix or determine the trial issues. Although the pretrial order did state that the parties would limit the trial to the issue of whether the defendant willfully paid the check after receiving notice to stop payment, it loosely reserved the right of each party "to raise any legal question" and the amendments of the pretrial order at the commencement of the trial fairly presented the contentions of the parties as to the effectiveness of the release clause. See Binder v. Green, 8 N.J. Super. 88, 93 (App. Div. 1950). Under the circumstances we consider the defendant's final contention to be without merit.
The judgment is affirmed.