**Otto AIPLE, Plaintiff-Respondent,**

v.

**SOUTH SIDE NATIONAL BANK IN ST. LOUIS, a Corporation, Defendant-Appellant.**

**No. 33340.**

St. Louis Court of Appeals.

Missouri.

May 20, 1969.

Motion for Rehearing or to Transfer to the Supreme Court Denied June 13, 1969.

————◆————

Edward C. Schneider, St. Louis, for defendant-appellant.

Gerald D. Morris, St. Louis, for plaintiff-respondent.

BRADY, Judge.

Plaintiff received jury verdict and judgment was entered thereon in the amount of $1,515.00 for actual damages suffered by plaintiff as a result of defendant's negligence in paying plaintiff's check after receiving a stop payment order.

The petition alleged plaintiff drew a check on defendant payable to one Walter in the amount of $1,515.00; that he gave notice in writing to defendant to stop payment on said check on May 11, 1964; and that on June 25, 1964 defendant negligently paid the check. Defendant's answer consisted of a general denial and alleged the check was given to Walter in payment for a used automobile, title to which was transferred to plaintiff; that plaintiff still retains the automobile and the title; and that plaintiff would be "unjustly benefited and unjustly enriched under the facts and circumstances as alleged in plaintiff's petition at the expense of this defendant and, therefore, cannot recover in this action."

We must first determine what issues are properly preserved by this appeal. The first and second of defendant's stated allegations of prejudicial error consist of abstract statements of law without any reference to or any showing how such statements are related to any action or ruling of the trial court. As such, both allegations of prejudicial error are in violation of Civil Rule 83.05(e), V.A.M.R., and we would be justified in disregarding either or both of them. However, with regard to the first we can with difficulty ascertain the action taken by the trial court which defendant contends was erroneous. This allegation of prejudicial error presents the contention the stop payment order signed by the plaintiff relieved the bank of liability in the event it paid the check through negligence, and that such a release is a valid and legal agreement binding the parties and not void as against public policy. There is no reference to any action taken by the trial court which defendant contends was prejudicially erroneous. Giving the defendant's brief a very liberal reading and by reference to the motion for new trial and the argument portion of the brief, we construe the contention attempted to be stated is that the trial court was in error when it denied defendant's motion for directed verdict on the ground the stop payment order excuses any negligence on the part of defendant. We will rule that issue.

■ We cannot make such a determination with regard to defendant's second allegation of prejudicial error. That allegation reads: "A depositor cannot make a profit out of the bank's mistake in paying the check, contrary to the depositor's stop payment order, but can only recover what is his loss. Action by the depositor in his retention of the benefits, in consideration of which the check was given, constitutes ratification by depositor of the bank's payment of the check and the bank is not liable. In this case the plaintiff used and operated this used Buick station wagon automobile from June 25, 1964 (the date the bank cashed the check) through 1965, 1966 and 1967 and still has the automobile." Reference to the motion for new trial will not help us understand of what trial court's action defendant complains. It does not

contain any reference to a theory of defense based upon plaintiff's having ratified defendant's payment of the check. The only allegation therein in any way pertinent to this issue is that stating plaintiff's failure to surrender and deliver title to the automobile " * * * constitutes an unjust enrichment." Neither are we assisted by reference to the argument portion of the brief. Therein defendant advances the theory of ratification as well as contending plaintiff did not suffer any loss. The best we can make of this allegation of error is that defendant is attempting to raise the same matter stated in its answer; i. e., retention of the automobile constituted a complete defense to plaintiff's cause of action. In any event, defendant fails to refer us to any action of the trial court whereby defendant was prevented from advancing its contention be it ratification, unjust enrichment, or both. Neither are we able to discover any such ruling in the transcript. To the contrary, the transcript discloses defendant made the objection which prevented this issue being developed and that defendant agreed with plaintiff the latter was entitled to recover the face value of the check if any amount. Neither does defendant now present any allegation of error with regard to Instruction No. 4, the measure of damage instruction, informing the jury that in the event they found in favor of plaintiff they must award him the sum defendant paid out of plaintiff's account on the check. Nor did defendant offer any instruction attempting to limit plaintiff's recovery or otherwise prevent the "unjust enrichment" it now contends results from this verdict. Under such circumstances it is easy to understand why defendant's brief is devoid of any reference to any action of the trial court with regard to this allegation of prejudicial error and why this is the first indication defendant contends plaintiff was entitled to something less than the face amount of the check. We hold this allegation of stated error to be in violation of Civil Rule 83.05(e), supra, and to preserve nothing for our review.

■ Defendant's third allegation of error concerns its offered Instruction "D". That point is not properly before us for ruling for the reason defendant has failed to include in its brief any argument directed to this allegation of error. Neither are there any cases cited in support of this allegation of error. It is therefore abandoned or waived. Civil Rule 83.05(a) (4), Notes 178, 179, V.A.M.R. Lansford v. Southwest Lime Co., Mo., 266 S.W.2d 564; Sigmund v. Lowes, Mo.App., 236 S.W.2d 14.

■ The last of defendant's allegations of prejudicial error attempts to state five rulings of the trial court with regard to the admission of evidence which defendant contends constituted prejudicial error. Of these five only two are contained in the motion for new trial. The other three are therefore not before us for ruling. Civil Rule 79.03, V.A.M.R. Defendant's contentions as to the two allegations properly preserved will be detailed later in this opinion.

The facts bearing on those allegations of prejudicial error properly before this court show plaintiff had maintained a regular checking account with defendant since 1963. He purchased a used Buick station wagon from one T. J. Walter on January 24, 1964. He had previously paid $75.00 down on the car and on the above date paid the outstanding balance with his personal check for $1,515.00. This check was payable to Walter and was drawn on defendant. Plaintiff had borrowed $1,500.-00 from defendant to pay for the car, and to secure this loan plus interest the bank took a chattel mortgage on the automobile in the amount of $1,722.00. This loan was repaid on schedule, the last payment being made in January of 1966.

Plaintiff contends the car developed severe mechanical defects shortly after he purchased it necessitating extensive repairs, and that when he confronted Walter with such repairs plaintiff was told Walter could do nothing for him. Plaintiff then began

efforts to stop payment on the $1,515.00 check he had given to Walter which had not yet been paid by the bank. His wife called defendant and requested it stop payment on the check but was informed plaintiff would have to come down and sign a stop payment form. When he went to the bank he had a conversation with one Oehler, one of defendant's officers, about stopping payment on this check. Oehler testified plaintiff informed him the check had not been paid and asked if he should stop payment on it. Oehler told plaintiff he was not going to advise him, but if plaintiff wished to stop payment he should go to another part of the bank and there execute a stop payment order on a form provided by the bank. This form was introduced into evidence as Exhibit "B" and reads as follows: "'NOTICE TO STOP PAYMENT ON CHECK SOUTH SIDE NATIONAL BANK In St. Louis Grand and Gravois, St. Louis 16, Mo. Date 5–11–64 Time Rec. 10:23 By VL Gentlemen: Please stop payment on Check No. 33, dated 1–24–64 for $1515.00 payable to ___T. J. Walter___ Signed as follows ___Otto Aiple___
 Name
The undersigned agrees to reimburse you for all damages, cost and expenses to which you may be subjected by reason of refusal to honor said check and to furnish due and sufficient security therefor whenever demanded. The undersigned understands that you do not guarantee that such check will not be paid if presented and agrees not to hold you liable on account of the payment of the same contrary to this request should it be occasioned through inadvertence, mistake or accident, or if by reason of such payment other items drawn by the undersigned are returned insufficient. This stop payment order will remain in effect for ninety days unless renewed in accordance with the Statutes of the State of Missouri, in such case made and provided. /s/ ___Otto Aiple___ '"
 Name
Plaintiff signed such a form, which was filled out by a bank employee, and was given a copy. Later plaintiff received his statement and cancelled checks from defendant and found the check in question had been paid by defendant some forty-five days after plaintiff had signed the notice to stop payment.

Plaintiff then went to see Mr. Helein, one of defendant's officers, in an attempt to determine why the check had been paid. He asked Helein how it happened and Helein said "the help did it" but that it was very odd it should happen to a person with plaintiff's name. Helein's further testimony was that it was not necessary for a person to come into a bank in order to stop payment on a check by executing one of the bank's stop payment order forms; that the bank stops payment upon receipt of a phone call telling them to do so followed by a letter containing the same instructions. There was an attempt to inquire of Helein with regard to a conversation he had with plaintiff after the check had been paid. He was asked what plaintiff told him at that time and plaintiff objected on the grounds of hearsay. Defendants made an offer of proof to the effect Helein would testify he asked plaintiff if the latter had the automobile in his possession; that plaintiff replied he did; that Helein offered to credit plaintiff's account in the amount of $1,515.00 upon surrender of the automobile and endorsement of the title to defendant; and that plaintiff refused.

At the trial plaintiff was asked the following questions and attempted to give the following answer: "* * * what happened to the car in these intervening weeks, between the time you took possession around the 1st of February—January 24th, somewhere thereabouts, until around the 1st of May? How did the car perform? What all happened to it? A Well, the car—" Defendant objected on the grounds the answer would be "self-serving * * * purely hearsay" and not binding on defendant. The last statement in his objection was: "I am going to object to any testimony along that line." He was overruled.

Plaintiff's counsel renewed his question and defendant's counsel then asked the question and answer be made specific as to the time these events occurred. Without further objection plaintiff then testified the starter, the transmission, and the universal joint "went wrong" within three or four weeks after he purchased his automobile and that every week something broke on the car. Inquiry was then made as to whether or not he had these items repaired and plaintiff testified that he did and thereafter called his counsel to seek legal advice about what he should do for the reason the car wasn't as represented.

From the bank's point of view, the mechanics of stopping payment on authority of a stop payment order from one of its customers is as follows. The record of the customer's account is kept on stiff cardboard ledger sheets in the bookkeeping department. Plaintiff's Exhibit No. 7 are photo copies of Mr. Aiple's account showing the size of the ledger sheets. These ledger sheets stand upright in a cabinet of chair height designed so that the ledger sheets are easily available to the bank employee who is charged with making the various entries on the sheets. When an entry is to be made on a ledger sheet, the employee removes the ledger sheet from the cabinet, puts the sheet in her typewriter, makes the entry, and then replaces the sheet in the cabinet. When a customer makes a stop payment order on a form provided by the bank, as Mr. Aiple did in this case, he executes the order at the bank's statement window. From the statement window the order is forwarded to the bookkeeping department where it is under the charge of the bookkeeper for the account in question. In the bookkeeping department the information contained on the stop payment order is typed onto another form prepared by the bank. Plaintiff's Exhibit No. 6 is the exact type of form used at the time in question. The form prepared by the bookkeeping department is of yellow paper edged on top with a wide red border. At the top of this form is printed in red letters about one-

half inch high the words "Stop Payment". This form is designed so that it hangs over both sides of the upright cardboard ledger card. After it has been placed over the ledger card an entry on the ledger card cannot be made without first removing the stop payment form. These forms are highly regarded and readily recognizable by the bank employees. Because each form has the complete information concerning the account and check in question, it could easily be reattached to its ledger sheet if it became accidently separated therefrom. One of these stop payment forms was placed on the ledger sheets containing the record of Mr. Aiple's account on or near May 11, 1964. Plaintiff's Exhibit No. 7 shows that numerous entries were made on Mr. Aiple's ledger sheets between May 11, 1964, the date of execution of the stop order, and June 25, 1964, when defendant paid the check.

Plaintiff further testified that he used the Buick station wagon purchased from Walter until a year and a half prior to trial in April of 1968.

In Kellogg v. Citizens' Bank of Ava, 176 Mo.App. 288, 162 S.W. 643, 1.c. [1] 644, the court held: "It has long been the settled law of this state that the giving of a check is not an assignment of the fund to the payee and that the drawer may countermand its payment at any time before payment is actually made or written acceptance given by the drawee. A check in the hands of a payee is nothing more than an order given by the party having a right to make disposition of a fund in the hands of his debtor, and if, before such order is acted upon either by payment or by written acceptance, a subsequent order is given to dishonor the original order, the subsequent order controls. * * * The law governing the question before us is well declared in the case of Albers v. Commercial Bank, 85 Mo. 173, 55 Am.Rep. 355, where it is held that the drawer of a check on a bank can countermand its payment before the payment is made; he being liable for the consequences of his act in

doing so. See, also, Dickinson v. Coates, 79 Mo. 250, 49 Am.Rep. 228; Coates v. Doran, 83 Mo. 337; Bank of Springfield v. First National Bank, 30 Mo.App. 271, 277."

When the bank paid the check in issue in this appeal in June of 1964, § 362.365, RSMo 1959, V.A.M.S., was still in full force and effect. That statute provided that stop payment orders were effective for only ninety days and any renewal had to be in writing. That section was repealed effective July 1, 1965 (see Laws 1965, p. 595, § 1), but at the time pertinent to this appeal the statute constituted a recognition of the principles enunciated in Kellogg v. Citizens' Bank of Ava, supra. It follows from what has been said above defendant had the legal obligation to stop payment on the check in question when ordered to do so by the stop payment order plaintiff signed.

■ A reference to that order will indicate that it is in two parts. The first part thereof is the notice to stop payment on the check. The second part is in effect a release. Each must be signed by the depositor. There are at least two reasons why this release is invalid and ineffective. In the first place, as enunciated in Kellogg v. Citizens' Bank of Ava, supra, defendant was already legally obligated to stop payment when plaintiff signed the first part of the form furnished him by defendant. Defendant's agreement to perform an act which he is already legally bound to perform does not constitute consideration for plaintiff's release. See Scott v. Missouri Ins. Co., 361 Mo. 51, 233 S.W. 2d 660; Smith v. Washington Nat. Ins. Co., Mo.App., 91 S.W.2d 169. It follows that defendant's agreement to stop payment could not be consideration for plaintiff's alleged release of his cause of action for negligence because defendant was already legally obligated to so act. The alleged release is void for lack of consideration.

■ There is another reason the alleged release is invalid and ineffective which we think it important to note. Plaintiff signed this notice to stop payment and alleged release on May 11, 1964. The defendant did not pay the check until June, some forty-five days after plaintiff signed the alleged release. At the date of the signing of the alleged release there was no controversy in existence between plaintiff and defendant. Defendant had then committed no negligence and there was in fact no dispute between the parties at that time. There can be no release unless there exists at the time of the claimed release a bona fide controversy concerning defendant's legal liability on some issue in dispute between the parties. Dixon v. Business Men's Assur. Co. of America, 365 Mo. 580, 285 S.W.2d 619.

Those interested in decisions from other jurisdictions regarding the validity and effectiveness of alleged releases of this nature should refer to The Commercial Bank v. Hall, 266 Ala. 57, 94 So.2d 198, which contains an extensive review of most of the leading decisions from many jurisdictions. In connection with the view taken in this opinion, see also Speroff v. First-Cent. Trust Co., 149 Ohio St. 415, 79 N.E.2d 119, holding a release void both for want of considerations and as being against public policy; Calamita v. Tradesmens Nat. Bank, 135 Conn. 326, 64 A.2d 46, holding release void for want of consideration; Reinhardt v. Passaic-Clifton Nat. Bank & Trust Co., 16 N.J.Super. 430, 84 A.2d 741, affirmed 9 N.J. 607, 89 A.2d 242; Thomas v. First Nat. Bank of Scranton, 376 Pa. 181, 101 A.2d 910, where the release was held void as against public policy since lack of consideration as a defense against a release is forbidden by statute in Pennsylvania. Of interest also is Central National Bank of Houston v. Martin, Tex. Civ.App., 396 S.W.2d 218; Hiroshima v. Bank of Italy, 78 Cal.App. 362, 248 P. 947. However, both Texas and California have statutes bearing on the question. Cases contrary to the view taken in this opinion may be found in Tremont Trust Co. v. Burack, 235 Mass. 398, 126 N.E. 782; Gaita

v. Windsor Bank, 251 N.Y. 152, 167 N.E. 203; and Hodnick v. Fidelity Trust Co., 96 Ind.App. 342, 183 N.E. 488.

We hold the trial court did not err in denying defendant's motion for directed verdict.

 The first of those allegations of prejudicial error dealing with the admission or exclusion of evidence which are properly preserved for our ruling is that the trial court erred in admitting evidence "detailing the mechanical defects of the automobile" over the objection of defendant such evidence was self-serving, hearsay, and not binding on the defendant. It is obvious the testimony was not validly objectionable on the first two grounds. With reference to the objection the evidence would not be binding on the defendant, we note defendant's answer contained the defense plaintiff was unjustly benefited and enriched because he retained the automobile and on that ground defendant contended plaintiff could not recover. This evidence was evidently admitted on the theory it went to rebut this defense and to explain and in support of plaintiff's contention retention of the automobile should not defeat his recovery. It was further admissible to explain why plaintiff did not stop payment on the check until May although it was issued in January. Reading the cold record before us we must conclude that the probative value of such evidence on either theory is tenuous at best, but it is well recognized the admission of evidence is largely a discretionary matter and absent clear abuse we will not interfere with the trial court's ruling. Boehmer v. Boggiano, Mo., 412 S.W.2d 103, l.c. 110; Kelso v. Lincoln Nat. Life Ins. Co., 227 Mo.App. 184, 51 S.W.2d 203, l.c. 209. We cannot find such a clear abuse present with reference to the trial court's ruling on this evidence.

The other allegation of prejudicial error with regard to evidentiary matters is defendant's contention the trial court erred in sustaining plaintiff's objection to the testimony of the defendant's officer Helein regarding his conversation with plaintiff. The offer of proof made in support thereof was that Helein offered to credit plaintiff's account for the amount of $1,515.-00 upon surrender of the automobile and endorsement of the title. In this connection we note that while the testimony was not fully developed due to defendant's objection as to any inquiry into the value of the automobile there was evidence to indicate the automobile cost more than the amount of the check and that plaintiff had expended additional sums on it to repair it. We also note the amount of the note and chattel mortgage was in excess of $1,515.00 by $207.00. In effect, Helein's testimony would have established that an offer of settlement had been made.

 It is the general rule that an unaccepted offer to compromise a disputed claim does not constitute an admission on the part of the person making it and is generally inadmissible. Huttig v. Brennan, 328 Mo. 471, 41 S.W.2d 1054; Schneider v. Dubinsky Realty Co., 344 Mo. 654, 127 S.W.2d 691. This rule finds its basis in public policy which favors the settlement of disputed claims out of court and results in treating a party's offer of compromise as an effort to obtain peace rather than an admission of liability or of the validity of the other party's claim. See cases collected in Mo. Digest, Evidence, ☞213(3); and 29 Am.Jur.2d, Evidence, §§ 624, 629. The proper objection is that the evidence is privileged or that its admission would be against public policy. McCormick, Evidence, § 76, p. 158. However, in the instant appeal the objection made was on the ground of hearsay. There is an exception to this rule. It is that when evidence of the compromise offer is given by or on behalf of the one making the offer such evidence is admissible. Harrison v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 348[9]. Helein's testimony regarding a conversation he had with plaintiff could not be hearsay under the circumstances of this case and we are forced to the con-

clusion the trial court erroneously ruled this objection.

We are not to reverse any judgment unless the error committed by the trial court materially affected the merits of the action. Civil Rule 83.13(b), V.A.M.R. Defendant was committed by its pleading, its theory at trial, and upon instruction of this case to the view plaintiff was entitled to recover the face value of the check or nothing. The jury was so instructed and defendant makes no complaint of that instruction. We cannot discern any material issue which could have been affected by the erroneous refusal of the trial court to admit evidence of a compromise offer of settlement. Indeed, since such an offer is subject to being construed as an admission of liability, defendant would seem to have benefited by its exclusion. We rule defendant's allegations of prejudicial error with regard to the court's rulings upon these evidentiary matters in favor of plaintiff.

The judgment is affirmed.

DOUGLAS W. GREENE, Special Judge, concurs.